[Civ. No. 972.   First Appellate District.—November 8, 1911.]

## OTIS LAURELLE, Respondent, v. DAVID BUSH, Tax Collector, etc., Appellant.

MUNICIPAL ORDINANCE — CONSTRUCTION—"MOVING PICTURES"—LICENSE FEE—APPROVAL BY POLICE COMMISSIONERS—ARBITRARY ACTION NOT ALLOWED.—A municipal ordinance regulating a license fee for a "kinetoscope," without otherwise specifying "moving pictures" therein, specifies the character of the business as clearly as if "moving pictures" were specified therein; and where such ordinance provides that such license shall not be granted except upon approval by the police commissioners, and prohibits a permit within a specified distance from a church or schoolhouse, except in the case of prior buildings, provides for no arbitrary action by the police commissioners, but limits their inquiry to the cases specified.

ID.—CONSTRUCTION AND EFFECT OF SUPPLEMENTARY ORDINANCE—REGULATION OF "MOVING PICTURES"—HARMONY WITH PRIOR ORDINANCE. A subsequently enacted supplementary ordinance regulating "moving pictures," and making it unlawful for any person to conduct or carry on any "moving picture" exhibition, without first applying for and receiving a permit from the board of police commissioners, upon an application signed with his name and address, and specifying the street and number of the place where the proposed "moving picture" exhibition is to be located, and otherwise regulating such exhibition, is to be construed in harmony with the original ordinance, and as auxiliary thereto.

ID.—CONSTRUCTION OF GENERAL GRANT OF POWER—DUTY TO ADOPT REASONABLE MEANS AND METHODS.—It is a recognized rule of statutory construction that a general grant of power, unaccompanied by specific directions as to the manner in which the power is to be exercised, implies the right and duty to adopt such means and methods as may be reasonably necessary to a proper exercise of the power. Applying this rule, if the ordinances under consideration did no more than denounce the issuance of a license without the previous procurement of a permit from the board of police commissioners, this would of itself imply an inquiry as to the granting of a permit in any given case; and tested by this rule, it cannot be said that the board of police commissioners is vested with an undefined and whimsical discretion as to the granting of a permit, the power being expressly limited to specified conditions of such permit.

ID.—REASONABLE AND NECESSARY CONDITIONS OF PERMIT.—The conditions to be complied with before a permit or license can be granted by the police commissioners cannot be said to be unreasonable or unnecessary, since the manifest menace of fire and panic likely to result to school children and church congregations from the close proximity of kinetoscope exhibitions is a valid and commendable reason for prohibiting new permits near thereto; and the requirement of the supplementary ordinance that the applicant for a new permit shall specify, by street and number, the precise place in which he desires to locate, is a reasonable and necessary expedient intended to aid in the proper enforcement of the ordinance.

ID.—UNIFORMITY OF CONDITIONS—MANDATORY RESTRICTION OF POWER.— The conditions prescribed by the ordinance apply equally and uniformly to all persons alike who apply for permits from the board of police commissioners; and the express direction therein that "no other restriction of such places, as to the location of places, shall be considered by the police commissioners," is mandatory, and clearly contemplates that no discretion is given to that board to withhold a permit, if it be found that the location or building selected conforms to the requirement of the ordinance.

ID.—DUTY OF POLICE COMMISSIONERS—MANDAMUS.—The ordinances impose upon the board of police commissioners the plain duty of granting a permit, upon ascertaining that the conditions precedent to the performance of such duty exist; and the refusal of a permit, in such a case, would be an abuse of power, rather than the exercise of a discretion, which could be reached and remedied by *mandamus*.

ID.—ORDINANCES NOT DELEGATING LEGISLATIVE POWERS TO POLICE COMMISSIONERS.—The ordinances do not delegate legislative powers to the police commissioners, but designate all of the conditions upon which a permit for a license may be issued; and the requirement that a license shall issue only after a permit has been granted confers no power upon that board to determine the necessity for a license,

or legislate as to the terms and conditions upon which it may be issued by the license collector. The requirement is but a preliminary step in the procedure for the procurement of a license, and in no sense can it be said to be an improper delegation of power.

ID.—IMPROPER MANDATE TO LICENSE COLLECTOR—DEFENSE OF ORDINANCES AND PERMIT NOT OBTAINED.—Where a writ of mandate was granted to the license collector by the superior court, notwithstanding a defense setting forth the ordinances, and that no permit had been applied for to the board of police commissioners, an averment in the petition that the location of the place was in conformity therewith cannot take from the board of police commissioners the power to determine that fact; and where the superior court improperly sustained a demurrer to the answer, and granted the writ of mandate on untenable grounds against the validity of the ordinance, the judgment granting the writ must be reversed with directions to determine the issues raised by the pleadings.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, and J. F. English, Assistant City Attorney, for Appellant.

Edgar C. Levey, and George M. Lipman, for Respondent.

LENNON, P. J.—The plaintiff in the above-entitled proceeding petitioned the superior court for a writ of mandate, requiring and compelling the defendant, as the tax collector and *ex officio* license collector of the city and county of San Francisco, to issue to plaintiff a license to engage in the moving picture business. The petition for the writ in the main alleged that on the third day of March, 1911, the plaintiff tendered to defendant, in his official capacity as tax and license collector, the sum of $25, the amount fixed by ordinance as a license fee for opening and operating a moving picture exhibition. Thereupon plaintiff demanded of defendant a license to carry on said business at the premises known and designated as number 452 Castro street in said city and county. It was further alleged in the plaintiff's petition that said premises were not within a distance of two hundred feet from the front line of any church or school, or within one

hundred feet of the property line of the sides or rear of any church or school; that the defendant refused to issue said license, and that by reason thereof plaintiff is prohibited from engaging in a lawful and useful business.

The plaintiff in his petition, and here, bases his claim of right to the license in question solely upon the provisions of ordinance No. 777 of the city and county of San Francisco, which requires in substance that every person, firm or corporation maintaining or conducting any museum, panorama, cyclorama, kinetoscope or phonograph parlor, wherein an admission fee is charged, and operated for the entertainment or amusement of the public, shall pay a license fee of $25 per quarter. The ordinance provides further that the tax collector shall not issue a license to any person, firm or corporation to conduct such business unless the applicant therefor shall have first obtained from the board of police commissioners a permit to conduct the same, and that the board of police commissioners shall not issue any permit to any person who proposes to maintain said business within a distance of two hundred feet from the front line of any church or school, or within one hundred feet of the property line of the sides or rear of any church or school. Provision is then made that these restrictions shall not apply to buildings already erected or in course of construction, and especially designed to be used for kinetoscope or other similar exhibitions, and that no other restrictions as to the location of such business shall be considered by the board of police commissioners.

Although plaintiff's petition makes specific reference by title and number to the ordinance just referred to, no mention is made of the fact that the ordinance requires a permit from the board of police commissioners before the defendant is authorized to issue a license. In this connection it appears that ordinance No. 777, which was enacted and approved in 1903, related only to the imposing of a license fee upon the owners of "museums, panoramas or cycloramas or any kinetoscope or phonograph parlor," and did not purport to regulate the conduct or restrict the location of such business. In the year 1908 this ordinance was amended solely by including within its provisions the clauses which required a permit from the board of police commissioners and prohibited the location

of the designed exhibitions within the limits hereinbefore specified.

It should be noted in passing that the board of supervisors in 1909, by a supplementary ordinance known as "No. 761, New Series," made it unlawful for any person to conduct or carry on any "moving picture" exhibition without first making application for and receiving a permit from the board of police commissioners. The only additional requirement of this ordinance, in so far as the procurement of a permit is concerned, is that the applicant must file his application in writing, which shall be signed by him, give his address, and specify by street and number the place where the proposed "moving picture" exhibition is to be located.

Other provisions of the ordinance give immediate super-vision and censorship of all pictures which may be exhibited, after a permit is granted and a license issued, to the police commissioners, and provision is also made for the revocation of permits in the event of a violation of certain prescribed rules not mentioned in the first ordinance, which are intended to keep the moving picture business within the limits of ordinary decency and morality. The validity of those rules is not assailed in this proceeding, and, therefore, they need not be further mentioned or considered.

The answer of the defendant set out *in haec verba* the original ordinance relied upon by the plaintiff, together with the amendatory and supplementary ordinance just referred to, and then pleaded as a defense to the action that the plaintiff at no time obtained the required permit in writing to engage in the kinetoscope or any similar business, and that for this reason alone the defendant refused to issue a license to plaintiff.

The plaintiff interposed a demurrer to the defendant's answer upon the ground that the facts therein stated did not constitute a defense. This demurrer was sustained without leave to amend. Thereupon judgment for plaintiff was entered in effect upon the pleadings, and the mandate of the court issued compelling the defendant to grant the license prayed for. The defendant appeals from the judgment.

The trial court, in sustaining the demurrer to the defendant's answer, proceeded presumably upon the theory advanced by plaintiff that the ordinances in question are unconstitu-

tional in this, (1) that they are unreasonable, discriminatory and oppressive, and an unlawful interference with and an unnecessary restraint of a useful and lawful occupation; and (2) that they attempt to delegate legislative powers and functions from the board of supervisors, a legislative body, to the police commissioners, an administrative board.

In support of this theory it is assumed by plaintiff's counsel that the ordinances under consideration do not attempt in any way or form to regulate or restrict the business of exhibiting moving pictures, and therefore it is argued that the ordinances are but the grant of an arbitrary power to the police commissioners, whereby they are given the sole and unrestricted authority to grant or refuse any application for the permit required by the ordinances.

If the assumption upon which this argument is founded were true, the result contended for might follow as a matter of law; but as we read and understand the several ordinances, they are not susceptible of any such construction. "Moving picture" exhibitions are not specifically designated in the category of amusements required to be licensed by ordinance No. 777, nor is any mention made of "moving pictures" in so many words by the amendment thereto, which purports to regulate "cycloramas, kinetoscope" and other similar entertainments. A "panorama," however, is defined to be "a picture which, representing scenes too extended to be seen at once, is exhibited a part at a time by being unrolled continuously before the spectator." A "kinetoscope" is defined to be "a machine for producing animated pictures" (Webster's Dictionary), and has been judicially described as "a mechanical contrivance involving, among other things, a transparent or translucent narrow film of very great length, on which a series of photographs consecutively represent the continuous development of movement or action in the persons or things which are the subjects of such photographs. This film by a photographic device is caused to pass with great rapidity by a set of lenses, through which, by use of a powerful electric light, the scenes which are the subject of the series of photographs are much enlarged and thrown upon a white screen. As one picture of the scene photographed succeeds another upon the screen with great rapidity, the impression produced upon the retina of the eye by the preceding picture

continues longer than does the existence on the screen of the picture which produces the impression. As a result the impression produced by one picture lasts approximately until the impression produced by the next succeeding picture occurs. The result is substantially that one sees a continuous moving picture, reproducing the action and movement of the scenes photographed upon the film." (*Barnes* v. *Miner,* 122 Fed. 480, 487.)

It must be conceded, therefore, that the character of the business contemplated by the plaintiff and for which he seeks a license comes as directly within the provisions of the original ordinance and its amendment as if "moving pictures" had been definitely named and described therein.

In our opinion ordinance No. 777, as originally enacted and subsequently amended, is still in force, and full effect may and should be given to its several requirements, notwithstanding the enactment and existence of ordinance "No. 761, New Series." The last-mentioned ordinance does not purport to fully and completely cover the subject matter of, or appear to be a substitute for, the earlier ordinance. The two ordinances are not in any wise conflicting. One does not purport to repeal the other either expressly or by implication. On the contrary, they are in complete harmony; and as the last ordinance appears to be purely an auxiliary of the original ordinance, both must be read and construed together. When so read and construed it is manifest that they formulate a reasonable, harmonious municipal regulation of all forms of panoramic, kinetoscope and moving picture exhibitions, not only in regard to the location and character of the buildings in which such exhibitions may be given, but in regard as well to the kind and character of pictures which may be produced.

The contention of plaintiff's counsel that the power to grant or refuse a permit for a license is arbitrary and dependent solely upon the mere whim and caprice of the police commissioners, is readily refuted by a casual reading of the ordinances. It is a well-recognized rule of statutory construction that a general grant of power, unaccompanied by specific directions as to the manner in which the power is to be exercised, implies the right and duty to adopt and employ such means and methods as may be reasonably necessary to a

proper exercise of the power. (2 Lewis' Sutherland on Statutory Construction, sec. 508; *Du Page Co.* v. *Jenks,* 65 Ill. 275; *Ex parte McManus,* 151 Cal. 331, [90 Pac. 702].)

If, therefore, the ordinances under consideration did no more than denounce the issuance of a license without the previous procurement of a permit from the board of police commissioners, this in itself would imply and require an inquiry as to the propriety of granting a permit in any given case. (*Goytino* v. *McAleer,* 4 Cal. App. 655, [88 Pac. 992].)

Tested by this rule, it cannot be said that the board of police commissioners is vested with an undefined and whimsical discretion in the matter of granting or refusing a permit. It is not necessary, however, to invoke this rule in aid of the validity of the ordinances here assailed, for they in express terms prescribe and limit the conditions under which a permit for a license may be applied for and granted.

Neither can it be said that the conditions to be complied with are unreasonable or unnecessary. The manifest menace of fire and panic likely to result to school children and church congregations from the close proximity of kinetoscope exhibitions is a valid and commendable reason for the proviso found in the amended ordinance prohibiting such exhibitions within two hundred feet of a church or school unless at the time of the passage of such amended ordinance they were housed in buildings already erected or in the course of erection, and specially designed for that purpose; and the requirement of the supplemental ordinance that the applicant for a permit to engage in such business shall specify by street and number the precise premises in which he desires to locate is a reasonable and necessary expedient plainly intended and devised to aid in an intelligent and effective enforcement of the ordinance.

These conditions apply equally and uniformly to all persons alike, and the direction that ''no other restriction of such places as to the location of such places shall be considered by the board of police commissioners . . . '' is mandatory, and clearly contemplates that no discretion is given to withhold a permit if it be found that the location or building selected for the proposed enterprise conforms to the requirements of the ordinance. In other words, the ordinances impose upon the board of police commissioners the plain duty of granting

a permit upon ascertaining that the conditions precedent to the performance of such duty exist; and the refusal of a permit in such a case would be an abuse of power rather than the exercise of a discretion, which could be reached and remedied by mandamus. (*State ex rel. Coffey* v. *Chittenden,* 112 Wis. 575, [88 N. W. 587]; *Reed* v. *Collins,* 5 Cal. App. 494, [90 Pac. 973]; 2 Abbott's Municipal Corporations, 985.)

The contention of plaintiff that the ordinance violates the rule of law which prohibits the delegation of legislative powers is untenable. As heretofore indicated, it is clear that the ordinances designate all of the conditions under which a permit for a license may be issued, and the requirement that a license shall issue only after a permit therefor has been granted by the board of police commissioners confers no power upon that board to determine the necessity for a license, or legislate as to the terms and conditions upon which it may be issued by the defendant as license collector. The requirement is but a preliminary step in the procedure prescribed for the procurement of a license, and in no sense can it be said to be an improper delegation of power. (*In re Guerrero,* 69 Cal. 99, [10 Pac. 261]; *In re Bickerstaff,* 70 Cal. 39, [11 Pac. 393]; *Ex parte Fiske,* 72 Cal. 125, [13 Pac. 310]; *In re Flaherty,* 105 Cal. 564, [38 Pac. 981, 27 L. R. A. 529]; *County of Los Angeles* v. *Spencer,* 126 Cal. 673, [77 Am. St. Rep. 217, 59 Pac. 202]; *Ex parte Quong Wo,* 161 Cal. 220, [118 Pac. 714].)

It may be true, as plaintiff alleges in his petition, that the premises selected by him are not within two hundred feet of a church or school; but the determination of this fact is vested in the board of police commissioners and not in the plaintiff; and if it be true, as alleged in the answer of the defendant, that the plaintiff has ignored the provisions which require a permit as a condition precedent to the issuance of a license, the defendant cannot by *mandamus* be coerced into doing that which his plain duty under the law prohibits him from doing. The plaintiff, before he will be accorded any relief, must first submit to the jurisdiction of the board of police commissioners; and even then will not be heard to complain except upon a showing that the board ignored his petition entirely, or arbitrarily refused him a permit in the face of

17 Cal. App.—27

the undisputed or established fact that the specified restrictions did not apply to his case.

The judgment is reversed, and the lower court directed to overrule the plaintiff's demurrer to the answer of the defendant, and then proceed to a trial and determination of the issues raised by the pleadings in the case.

Hall, J., and Kerrigan, J., concurred.