[S. F. No. 12089.   Department One.—March 26, 1928.]

E. W. MAGRUDER, Appellant, v. CITY OF REDWOOD (a Municipal Corporation) et al., Respondents.

Joseph J. Bullock and Eric Lyders for Appellant.

Albert Mansfield and A. J. Stebenne for Respondents.

CURTIS, J.—This action was instituted by the plaintiff for the purpose of enjoining the city of Redwood City and its municipal officers from proceeding with the prosecution of a pending criminal action in the recorder's court of said city, and from instituting or maintaining any further actions against plaintiff, for maintaining and carrying on a lumber-yard in said city in violation of ordinance number 211, adopted by the board of trustees of said city, and, further, to have said ordinance declared void and the defendants perpetually enjoined from arresting, interfering with or molesting plaintiff in the conduct of his said lumber-yard.

The city of Redwood City is a city of the sixth class. It has never adopted a charter and therefore is operating under the general law of this state applicable to municipalities of that class and is governed by a board of trustees consisting of five members. Ordinance number 211 of said city was adopted by the board of trustees on April 4, 1921, and purported to divide said city into four districts or zones described therein as residence, industrial, business and restricted business districts. Section 9 of said ordinance declared it unlawful for any person, firm, or corporation to erect, establish, manage, or carry on within the residence district of said city certain enumerated and described businesses and industries, among which are lumber-yards. Section 12 of said ordinance provided that the provisions thereof should not apply to any factory, works, or business which at the time of said ordinance was lawfully established within the limits of said city. Plaintiff acquired and became the owner in the year 1893 of lots 1 and 2 and in the year 1894 of lot 3, all being in block C of a certain subdivision situated in said city, and all of said three lots were included within the residence district as fixed and defined by said ordinance.

The court found that since the adoption of said ordinance and under and by virtue of a written permit from the board of trustees of said city the plaintiff constructed and erected a frame shed on a portion of said lot 1 and that ever since on or about May 5, 1923, plaintiff has and does now carry on and conduct a lumber-yard upon said three lots entirely within said residence district without the permission of anyone. The court also found that on or about July 5, 1924, under and by virtue of a written permit from the board of trustees of said city the plaintiff erected and constructed a frame store building on the southeasterly corner of said lot 1, which store building has been ever since and now is used for the storage, display, and sale of hardware. The court further found that the territory surrounding and immediately adjacent to plaintiff's business is rapidly being built upon with homes averaging in value from three to eight thousand dollars; that it is particularly suitable for residential purposes and said business of plaintiff is a menace to the community because of the inflammable nature of the material kept. The conclusion of the court was that

said ordinance was valid and that plaintiff was carrying on and conducting said lumber-yard within the residence district of said city, as fixed by said ordinance, and contrary to and in violation of the prohibitive terms thereof. It accordingly gave judgment in favor of defendants and the plaintiff has appealed therefrom.

The ground upon which the plaintiff based his prayer for relief in the trial court, and that upon which he now asks for a reversal of the judgment in this court is that said ordinance number 211 is invalid and of no binding force or effect upon him in the conduct of his said lumber-yard at the place where it is located. In this connection appellant contends that said ordinance is unreasonable and discriminatory and therefore invalid in that it does not prohibit manufacturing, trade, or business generally within the so-called residence district, but only prohibits certain factories, trade, and classes of business specifically enumerated in said ordinance within said district, while it allows other factories, trades or business of a more obnoxious character to be conducted therein.

There is no provision of the ordinance which excludes business and trade generally from being carried on and conducted in said residence district, but section 9 of the ordinance, as above noted, enumerates certain classes of business, trades, factories, and plants which are prohibited from being established, maintained, or carried on within said residence district. This enumeration includes most pursuits which are usually followed in a business district of a city, but appellant has called attention to the fact that there has been omitted therefrom a number of occupations, the establishment and conduct of which in a residential section would be obnoxious to the health, safety, and general welfare of the inhabitants therein. As illustrating his contention he has pointed to the fact that the ordinance prohibits the blacksmith and cooper from exercising their trades within the residence district, but permits the carpenter, the cabinetmaker, the painter and the printer; it prohibits hotels, but not lodging-houses; poolrooms, but not bowling-alleys; lumber-yards, but not livery-stables, and vinegar works, but not a cider-press. A more extended list is set forth in appellant's brief, but the above will be sufficient to illustrate his

argument. Appellant makes no claim that the various classes of business which the ordinance has prohibited from being established, maintained and carried on within said district are of such a character that their establishment and operation in a residential district would not be objectionable and obnoxious to the inhabitants thereof, and therefore may be lawfully excluded from such a district by the municipal authorities in the proper exercise of the police power with which they are invested, but he contends that by failing to exclude, and thereby impliedly consenting to their existence and operation in such residence district, other occupations equally, if not more, obnoxious than those excluded, the ordinance containing such enactments and producing such results is both unreasonable and discriminatory and therefore void.

The right of municipalities of this state to enact zoning ordinances is now settled beyond any doubt, and has received the sanction of both the legislature and the courts (Stats. 1917, p. 1419; *Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381]; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388]).

A question similar to that above mentioned was raised as to the validity of an ordinance considered by this court in the case of *Grumbach* v. *Lelande,* 154 Cal. 679 [98 Pac. 1059]. By this ordinance the city of Los Angeles had prohibited wholesale liquor establishments in certain districts, in which saloons and liquor-selling restaurants were permitted to be operated and carried on. It was contended "that if the design of the ordinance be to protect the residents of the district of the city from the presence of an annoying, disagreeable, or offensive business, there was more reason to suppress the saloon and the liquor-selling restaurant than there was to put the wholesale business under the ban." For this reason the petitioner therein urged that the ordinance was unreasonably and unjustly discriminatory, and, therefore, void. In answer to this claim this court said:

"The question thus presented is not without difficulty. The reasons which may have induced the council of the city to suppress the one class of business while permitting the other are not obvious. But upon the other hand there may

have been reasons actuating the council, good and sufficient in themselves, though not clearly appearing from a mere reading of the ordinance itself. Thus, it is not improbable that the so-called wholesale liquor houses within the prohibited district were but adjuncts to retail grocery stores. The regulations governing the conduct of saloons forbid the presence at or about them of women or girls. These regulations do not apply to the wholesale houses and it is conceivable that abuses may have sprung up from the sale to or use by women and girls of liquors purchased from such grocery stores. While designated 'wholesale dealers' liquors are allowed to be vended by such houses in such small quantities as pints, and the presence of women and girls in grocery stores where liquor could be vended in this way might have resulted in an evil not attached to the existence of the saloon which by law all women and girls and children are forbidden to enter. It certainly is not made clear that good reason does not exist for the discrimination, and in the absence of a satisfactory showing to this effect a court leans to the upholding of such regulatory provisions.''

In considering ordinance number 211 of Redwood City in the light of this ruling we might say that while we may not be able to discern the reason which induced the board of trustees of said city to pass this kind of an ordinance, rather than one which excluded generally all business from the residence district, we cannot say that no good reason existed for the passage of the ordinance in its present form. However, it is not difficult to discern a distinction in most cases between those lines of business expressly mentioned in the ordinance, and which were prohibited from being carried on within said residence district, and those not enumerated therein, and, therefore, at least, impliedly permitted to be carried on in the residence district of said city. The business of a blacksmith and that of a cooper are, as a general rule, productive of loud and resounding noises, while the same complaint cannot be made against the carpenter, the cabinet-maker, the painter and the printer as they ply their respective trades. There is also an apparent difference between a hotel and a lodging-house, the former being what might be properly termed a strictly business establishment, while the latter partakes more of the

nature and character of a residence. Poolrooms have become in many localities highly objectionable as places where the idle, and often the criminal element, congregate and thus prove a menace in a residential section, while such a complaint is seldom, if ever, made in reference to a bowling-alley. The objection to a lumber-yard in a residence district is most obvious. Its presence in such a neighborhood has been declared by this court to "be a menace to the property" therein (*In re Montgomery*, 163 Cal. 457 [Ann. Cas. 1914A, 130, 125 Pac. 1070]). The same, however, may be said regarding a livery-stable. Just why the board of trustees did not prohibit the latter business from being carried on within the residence district may not appear from the ordinance itself, yet there may have been good and sufficient reasons for not including it within the lists of business occupations excluded from the residence section of the city. The day of the old horse is about gone. Livery-stables are now in a large measure a thing of the past. A person seeking for a livery-stable in one of our modern cities would, as a rule, not only seek in vain, but also might subject himself to the suspicion of having just been awakened from a sleep as prolonged and profound as that which made the name of Rip Van Winkle famous. The board of trustees may well have concluded that it was no longer necessary to make this class of business the subject of legislative regulation for the reason that it had passed out of existence in that community entirely. A satisfactory reason, we think, might be given for the action of the trustees in omitting from the prohibited occupations most, if not all, of those mentioned by appellant, and the omission of which appellant claims renders the ordinance illegal. But even if this could not be done, so long as it is not made clear (and we do not think it has) that good reason does not exist for the discrimination, it is the duty of the court to uphold the regulatory provisions of the ordinance. We are satisfied from the showing made that the ordinance is not discriminatory or unreasonable, but that it is a valid legislative enactment of the board of trustees of said city. We might close the discussion of this phase of the case by quoting from a recent decision of this court as follows: "The courts are loath to substitute their judgment as to the necessity

for a particular enactment for the legislative judgment as to the need of such an enactment with reference to the exercise of the police power. A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. Every intendment is to be indulged by the courts in favor of the validity of its exercise and unless the measure is clearly oppressive it will be deemed to be within the purview of that power. It is only when it is palpable that the measure in controversy has no real or substantial relation to the public health, safety, morals or general welfare that it will be nullified by the courts." (*Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [38 A. L. R. 1479, 234 Pac. 381, 385].)

Appellant has cited a long list of authorities upon the question of special legislation, which we do not question, but they are not applicable in this action. An ordinance is not rendered special simply because it does not cover every conceivable subject which the legislative authorities might have included in it. This was decided in the case of *In re Martin,* 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235], where this court sustained a statute which regulated the hours of employment in underground mines and in smelting and reduction works and limited the period of employment therein to eight hours. In the course of the opinion in this case the court said:

"It is argued by the appellant that the act is special because it does not include in its scope many occupations other than mining which are equally dangerous to the health of the persons engaged in them. Reference is made, for example, to marble cutters and marble drillers, diamond cutters, workers in furnaces and laundries, men employed in wine cellars, breweries and ice-houses, men in boiler works, match-makers, cleaners of clothes, makers of white lead, of china and earthenware, and many others.

"The argument is, apparently, that any law is special which does not include all of these occupations. This view is obviously unsound. Whether these other occupations present the same dangers to health as those involved in mining, etc., and whether, if they do, these dangers can best be met by restricting the hours of labor, are primarily questions for the legislature. . . . In other words, the law

is not rendered special by the mere fact that it does not cover every subject which the legislature might conceivably have included in it. It is enough that the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment.''

A further objection is made to the validity of the ordinance by reason of the provisions of section 12, which provides that it should not apply to any business lawfully established in said city at the time of the adoption of said ordinance. It is conceded that an ordinance may properly prohibit the establishment of any new business of a given kind within a certain district, but permitting the continuance of existing establishments of the same kind and character. It was so held in the recent case of *Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 Pac. 388]. It is claimed by appellant, however, that the provisions of section 12 of the ordinance go further than merely permitting existing factories and business to continue as they were before the passage of the ordinance, but that they permit, for instance, the owner of a factory which at the date of the adoption of the ordinance was located in the industrial district of said city, thereafter to move said factory into any other district in the city, even into the residential section thereof. In our opinion this is an extreme construction to be placed upon the provisions of section 12 of said ordinance. These provisions must be construed in connection with the other terms and provisions of the ordinance, and when so construed we think their intent and purpose are clear, and that it was only intended by the provisions of section 12 of the ordinance to exempt existing occupations from making any change in their location or manner of doing business by reason of any of the terms of the ordinance. In our opinion there is nothing in the ordinance which would give to an existing business any right to move from the district in which it was located at the date of the passage of the ordinance into another district where the restrictions are more onerous than those applicable to that particular business.

Lastly, appellant contends that the trustees of said city have repudiated the ordinance by granting appellant a

license to erect a shed on his lots, in which he now carries on said lumber-yard, and also in granting appellant a license to erect the building on said lots in which he is now conducting a hardware store. The court found that the appellant has carried on the lumber-yard on said lot without the permission of anybody, and that under and by virtue of a written permit from said board of trustees appellant had erected the building in which he was conducting his hardware business. As to whether he ever received any permit to carry on the hardware business in said building the findings are silent. The criminal proceeding instituted against appellant in the recorder's court of said city, and to enjoin which this proceeding was instituted, charges appellant with the violation of said ordinance only in maintaining said lumber-yard, and does not pretend to call in question his right to carry on the hardware store. The court found, as we have seen, that appellant was conducting the lumber-yard without the permission of the board of trustees. Appellant contends, however, that as he had received a permit from the trustees to erect the building in which he conducted his lumber-yard, and also a like permit to erect the second building and to carry on therein his hardware business, the board of trustees thereby repudiated and violated the ordinance and are now in no position to enforce the same. The permit to erect the building in which appellant afterward carried on his lumber-yard did not state any purpose for which the building was to be used. Neither did the permit for the building in which appellant carried on the hardware business give the use or purpose for which it was to be used. There is no evidence that the board of trustees knew the purpose for which the first named building was to be used at the time the permit therefor was granted. There is evidence, however, that the board knew that the appellant intended to carry on a hardware store in the second mentioned building at and before the permit therefor was issued. That matter, therefore, is resolved down to the question whether the board of trustees by granting a permit to erect the second building, knowing at the time it was to be used as a hardware store, which use was contrary to the terms of the ordinance, thereby placed themselves in a position that prevented them from thereafter enforcing the

terms of the ordinance which prohibited a lumber-yard from being operated within the residence district. Appellant contends that they have. He cites no authority to support his contention, and we are not seriously impressed with it. We know of no power possessed by a board of trustees that will permit it in any such manner to nullify a legal ordinance adopted by the municipality. An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof. This duty is not a personal duty that can be waived at their will, nor can they be estopped by any action of theirs from the faithful performance of the same. There is no merit in this contention of appellant.

The objection of respondents to the hearing of this appeal on the ground that no notice of appeal was ever filed by appellant is without merit. Appellant filed a request for a transcript in accordance with the provisions of section 953a of the Code of Civil Procedure, containing the following sentence: "Notice is given that the plaintiff in the above entitled action desires and intends to appeal from the judgment therein given." This has been held to be sufficient notice of appeal (*Purity Springs Water Co.* v. *Redwood Ice Delivery, ante,* p. 286 [263 Pac. 810]).

The judgment is affirmed.

Seawell, J., and Preston, J., concurred.