[Civ. No. 22316. First Dist., Div. One. Sept. 30, 1965.]

WILLIAM R. PLUM et al., Plaintiffs and Respondents, v. THE CITY OF HEALDSBURG et al., Defendants and Appellants.

J. A. Ratchford for Defendants and Appellants.

Dermott, Maxwell & Hood and Richard B. Maxwell for Plaintiffs and Respondents.

MOLINARI, J.—This is an appeal by the City of Healdsburg (hereinafter referred to as the "City"), its Building Inspector (hereinafter referred to as the "Inspector"), and the five members of its City Council (hereinafter referred to as the "Council") from the judgment of the trial court ordering that a writ of mandate be issued to compel the Inspector to issue a building permit to respondents, William and Vera Plum.[1]

In their verified petition for writ of mandate respondents alleged essentially as follows: That they are the owners of a parcel of real property situated in Healdsburg; that at all times concerned there was in full force and effect in Healdsburg, a municipal corporation, a zoning ordinance (No. 354) under which respondents' property was zoned M-1; that section 10.1 of the ordinance, describing in part the uses which are permitted in an M-1 zone, provides: "10.1 Uses Permitted: Retail and wholesale stores or storage, service establishments, industrial and manufacturing uses and any other uses which, in the opinion of the Planning Commission, are of a similar nature"; that pursuant to their desire to construct a

---

[1]From the clerk's transcript it appears that no formal judgment was entered in this action. At oral argument it was stipulated by the parties that they have treated the "Conclusions of Law" and the "Writ of Mandate," both signed by the trial judge, as the judgment in the instant case, and that we may deem and consider that the judgment appealed from consists of the conclusions of law and the writ of mandate on file in the proceedings and included in the clerk's transcript.

trailer camp or mobile-home park on their property, respondents, by letter dated December 31, 1963, requested a determination by the Planning Commission (hereinafter referred to as the "Commission") that this proposed use was similar in nature to the uses set forth in section 10.1 of the zoning ordinance; that on January 13, 1964 the Commission, consisting of seven members, by a four to three vote approved respondents' request, determining that the proposed use of respondents' property as a trailer camp was of a similar nature to those described in section 10.1 of the zoning ordinance; that on January 15, 1964 respondents applied to the Inspector for a building permit; that the Inspector refused to issue such a permit until the Council had reviewed the Commission's determination in regard to respondents' proposed use of their property; that subsequently, on January 27, 1964, the Council adopted a resolution "Denying Building Permit To William R. Plum For Establishment Of Trailer Camp In M-1 Zoning District On His Mill Street Property"; that as is indicated in the resolution, the basis of the Council's action was that "the action of the Planning Commission was not based upon fact; that the decision of the Planning Commission overrides the decision of the City Council; that the proposed trailer-camp is not a similar use as noted in Section 10.1 of the Zoning Ordinance; that said use would pose future problems in the area; and that this permission would jeopardize the other industrial areas in the city"; that on February 19, 1964 respondents filed a second application with the Inspector for a building permit to construct a trailer camp on their property, which application was denied by the Inspector "due to denial by City Council—Res. 7-64"; that the action of the Council in adopting said resolution was without authority, since under the ordinance the right to make a final determination that the proposed use of respondents' property as a mobile-home park was a similar use to other uses permitted within an M-1 zone rests in the Commission and the right of appeal to the Council from a determination of the Commission is given only to an applicant who is not satisfied with its decision; and that it was and is the duty of the Inspector to issue the requested permit.

Appellants filed both an answer and a demurrer to respondents' petition. The basis of the demurrer was that the petition did not state facts sufficient to constitute a cause of action and that the trial court did not have jurisdiction because respondents had not exhausted their administrative remedies

provided for in ordinance No. 354. The verified answer admitted the constituency of the Commission, the adoption of the subject ordinance by Healdsburg and of resolution No. 7-64 by the Council, and the facts that respondents were the owners of the subject real property, that they desired to construct a trailer camp upon said property, and that they applied for a permit therefor. The remaining allegations of the petition were, however, denied. In addition the answer affirmatively alleged that respondents failed to request an amendment to the zoning ordinance to the effect either that the zoning of their property be changed from M-1 to C-2 or that the classification "trailer-camp" be listed in section 10.1 as a permitted use; that the action of the Commission was unreasonable, arbitrary and an abuse of discretion; that that portion of section 10.1 of the ordinance relating to "any other uses which, in the opinion of the Planning Commission, are of a similar nature" is unconstitutional; that a trailer camp is not similar to any of the uses described in section 10.1; and that the petition was barred by Healdsburg's ordinance No. 459 adopted on March 2, 1964.

The hearing on the demurrer and the trial were held at the same time. The trial court reserved its ruling on the demurrer and proceeded to hear the testimony of respondent William Plum, who testified essentially to the matters alleged in the petition. On cross-examination it was brought out that prior to the application which is the subject of this action, respondents had, on two occasions, applied for a variance permit to construct a trailer camp on their property. The first of these applications was denied by the Commission and the Council. The second was granted by the Commission but was denied by the Council. Following Plum's testimony, appellants presented the Inspector and the Mayor as witnesses. The gist of the Inspector's testimony was that he refused to issue a permit to respondents because under his interpretation of the subject ordinance the action of the Commission was not final but required the approval of the Council. The Mayor stated that he was of the opinion that a trailer park, being a residential use, was incompatible with the uses permitted in an M-1 zone, which was intended for industrial uses. He also testified that he voted to overrule the decision of the Commission because its action, if allowed to stand, would have established that a trailer camp was a "similar use" to those permitted in an M-1 zone.

At the hearing it was conceded by the parties that since the salient facts were not in dispute the questions presented

were essentially ones of law. The matter having been submitted, the trial court thereafter made its order overruling appellants' demurrer and granting a writ of mandate as prayed. In its findings of fact the trial court found that the action of the Council in adopting a resolution denying respondents' application for a building permit was without authority; that under the zoning ordinance the Commission had the right to make a final determination that respondents' proposed use of their property was similar to other uses permitted within an M-1 zone; that it was the duty of the Inspector to issue a building permit to respondents; that respondents were not required to request an amendment of the zoning ordinance before bringing their action for a writ of mandate; that the determination of the Commission was neither unreasonable nor arbitrary, nor was it an abuse of its discretionary power; that "It is not true that a trailer camp is not similar to any use described in Section 10.1" of the zoning ordinance; and that the subject zoning ordinance was not unconstitutional. Accordingly, the trial court, in the form of a conclusion of law, determined that respondents were entitled to the issuance of a writ of mandate directing the Inspector to issue a building permit to them.

In the light of the foregoing it is apparent that the issues presented to the trial court were questions of law which involved the interpretation of the subject ordinance. Accordingly, since the construction of a statute and its applicability to a given situation are matters of law, we are not bound by the trial court's construction of the subject ordinance. (*Estate of Madison,* 26 Cal.2d 453, 456 [159 P.2d 630] ; *Neal* v. *State of California,* 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839] ; Code Civ. Proc., § 2102.) Before proceeding to discuss the interpretation and meaning of the ordinance as applied to the instant situation it should be pointed out that at oral argument appellants abandoned their contention that section 10.1 is unconstitutional.

The first question presented is whether the Commission had authority to determine whether a trailer camp is a use permitted in an M-1 zone. An analysis of the subject zoning ordinance discloses that Healdsburg is divided into six zoning districts, referred to, respectively, as zones R-1, or single-family residential zone; R-2, or two-family or duplex zone; R-3, or multiple-family residential zone; C-1, or retail (light) commercial zone; C-2, or wholesale (heavy) commercial zone; and M-1, or industrial zone. The uses permitted in any R or C zone are specifically described and enumerated. Those

permitted in an M-1 zone are not specifically enumerated but, as hereinbefore stated, are described in section 10.1 as follows: ''Retail and wholesale stores or storage, service establishments, industrial and manufacturing uses and any other uses which, in the opinion of the Planning Commission, are of a similar nature.'' In section 10.2 it is provided that industrial or manufacturing uses which, in the opinion of the Commission, may be objectionable because they produce odors, dust, noise, bright light, or vibration, or involve the storage or handling of explosives, and certain other specified industrial and manufacturing activities[2] are permitted uses in an M-1 zone ''subject to first securing a use permit in each case.'' It should be noted here that a ''trailer camp'' is a use specifically permitted in a C-2 zone. (§ 9.2, subd. jj.) It should also be pointed out that section 8, providing the regulations for C-1 zones, includes within its specification of uses permitted in such zones ''other uses which in the opinion of the Planning Commission are of a similar nature.'' (Subd. w.)

The subject zoning ordinance provides, further, that R-1 uses are permitted in an R-2 zone (§ 6.1, subd. (a)); that R-1 and R-2 uses are permitted in an R-3 zone (§ 7.1, subd. (a)); that all uses permitted in any R zone are permitted in a C-1 zone (§ 8.1, subd. (a)); and that all uses permitted in a C-1 zone are permitted in a C-2 zone (§ 9.2, subd. (a)). The ordinance does not, however, provide that any of the uses permitted in either an R or C zone are permitted in an M-1 industrial zone. The ordinance also provides that zoning permits shall be required for all buildings and structures erected, altered, or repaired in any district established by the ordinance; that application for a zoning permit shall be made in writing on a form prescribed by the Commission; that a zoning permit shall be issued if the proposed building or use is in conformance with the provisions of the ordinance; and that such zoning permit may be a part of the building permit. (§§ 16.1, 16.2, 16.3.)

■ Analyzing the provisions of the subject ordinance, we are satisfied that except in those cases where the ordinance

[2]These uses are enumerated as follows: ''Drilling for and/or removal of oil, gas, or other hydrocarbon substances, commercial excavation of building or construction materials, distillation of bones, dumping, disposal, incineration or reduction of garbage, sewage, offal, dead animals, or refuse, fat rendering, manufacture or storage of acid, cement, explosives, or fireworks, fertilizer, gas, inflammable fluids, glue, gypsum, lime or plaster of paris, stockyard or slaughter of animals[,] refining of petroleum, or its products, smelting of iron, tin, zinc, or other ores[,] junk yards, hog raising.''

specifically requires that a "use permit" be obtained, any applicant, upon application to the Commission, is entitled to a zoning permit, where the proposed use is in conformance with the provisions of the ordinance. ■ Accordingly, in the instant case the application for a zoning permit for a trailer camp was properly made by respondents to the Commission whose duty and province it was to determine whether such use was in conformance with the provisions of the ordinance and specifically whether it came within the purview of section 10.1. Under this mandate the Commission was authorized and empowered to determine whether a trailer camp use was a use similar to a retail store, wholesale store, storage establishment, service establishment, industrial use, or a manufacturing use.[3] If a trailer camp was such a similar use, respondents were entitled to a zoning permit either separately or as a part of the building permit. The Commission determined that the proposed use was such a similar use and authorized the issuance of the zoning permit. Accordingly, unless the Commission's determination and approval were not in conformance with the ordinance, the Inspector, as a ministerial officer, could not refuse to issue a building permit insofar as the zoning regulations were concerned.

The record discloses, however, that the Inspector refused to issue the building permit on the basis that the action of the Commission was subject to review and approval by the Council. We are thus projected to the next question presented on appeal, that is, whether the authorization for the issuance of a zoning permit by the Commission is, under the subject ordinance, subject to review, and to either approval or rejection by the Council. ■ We are of the opinion that since the ordinance contains no provision for review of the Commission's determination in favor of respondents that a trailer camp is a similar use to those uses listed in section 10.1, its decision could not be overturned by the Council. (See *Magruder* v. *City of Redwood City,* 203 Cal. 665, 675 [265 P. 806]; *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [187 P.2d 686].) We are persuaded to this conclusion by the provisions of sections 18.1 and 18.4 which, respectively, give the Commission "the power to hear and decide appeals based on the enforcement of this ordinance or the interpretation of the provisions thereof" and provide for an appeal from the Commission's

---

[3]It should be noted here that respondents did not apply for a use permit pursuant to section 10.2 of the ordinance, nor is it contended by respondents that a trailer camp is a use encompassed within this section.

decision to the Council "In case the applicant is not satisfied with the decision of the Planning Commission. . . ." It thus appears that where the Commission authorizes a zoning permit its decision in favor of the applicant is, under the terms of the ordinance, not subject to review by the Council. It is *only* when the applicant is not satisfied with the decision of the Commission that he may appeal to the Council. It should be here noted that similar provisions prevail in situations involving use permits. (§§ 15, 15.1, 15.2, 15.3, 15.4.) Our conclusion is fortified, moreover, by the fact that in certain situations the ordinance specifically provides for review by the Council of the Commission's determination irrespective of whether this determination is favorable or unfavorable to the applicant. Accordingly, it is provided that an application for a variance is to be made to the Commission whose written findings of fact, after a public hearing, shall be submitted to the Council, and that thereupon the Council may grant or deny the variance. (§§ 14, 14.1, 14.2, 14.3, 14.4, 14.5.)

In justification of their refusal to issue respondents a building permit appellants argue that the action of the Council was a municipal affair and therefore justifiable, and that the Inspector would have been acting contrary to the terms of section 10.1 of the ordinance had he issued a building permit to respondents. In answer to this argument it should be stated that if the Commission's determination is a proper one under the terms of the ordinance, both the Council and the Inspector are bound by such determination since both are bound by the provisions of the zoning ordinance, which the Council itself enacted, until such time as these provisions are changed by means of proper amendment. (*Magruder* v. *City of Redwood City, supra,* 203 Cal. 665, 675; *City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 251 [1 Cal.Rptr. 158, 347 P.2d 294].) The important question which projects itself, however, is whether the Inspector, who is charged under sections 20.1 and 20.2 with the enforcement of the ordinance and with the issuance of building permits, can properly refuse to issue a building permit when he believes that the authorization for the zoning permit is null and void. Stated another way, the question is whether the Inspector, although a ministerial officer, is entitled to question the validity of a zoning permit authorized by the Commission.

Adverting to the instant case we note that section 16.3 of the ordinance specifically provides that "If any permit is issued, by error or otherwise, where a proposed use or building is not in conformance with the provisions of this

ordinance, such permit shall be null and void." ■ Mandamus will not lie to compel the performance of acts which are void, illegal, contrary to public policy, or which tend to aid in an unlawful purpose. (*Cook* v. *Noble,* 181 Cal. 720, 721 [186 P. 150]; *McCutcheon* v. *Superior Court,* 134 Cal. App. 5, 13 [24 P.2d 911].) ■ Moreover, to authorize the issuance of a writ of mandamus the party sought to be coerced must be bound to act. (*Sherman* v. *Quinn,* 31 Cal.2d 661, 664 [192 P.2d 17]; *Coon* v. *Biscailuz,* 1 Cal.App.2d 346, 348 [36 P.2d 430]; *Ross* v. *O'Brien,* 1 Cal.App.2d 496, 501 [36 P.2d 1108]; *Albori* v. *Smith,* 18 Cal.App.2d 615, 618 [65 P.2d 18]; Code Civ. Proc., § 1085.) ■ Accordingly, even though mandamus is the proper remedy to compel the performance of a ministerial act (*Williams* v. *City of Stockton,* 195 Cal. 743, 748 [235 P. 986]; *Munns* v. *Stenman,* 152 Cal.App.2d 543, 557 [314 P.2d 67]; *Palmer* v. *Fox,* 118 Cal.App.2d 453, 458 [258 P.2d 30]), a ministerial officer cannot be coerced into doing that which his plain duty under the law prohibits him from doing. (*Laurelle* v. *Bush,* 17 Cal.App. 409, 417 [119 P. 953].)

■ In the light of the foregoing, while it was the ministerial duty of the Inspector to issue a building permit upon the Commission's determination that respondents were entitled to a zoning permit, he was not obliged to issue the building permit in violation of the terms of the ordinance. The crux of our inquiry, therefore, is whether this determination by the Commission was in conformance with the ordinance, and specifically, whether a trailer camp is a use of a "similar nature" to those permitted by section 10.1 of the ordinance.

■ The word "similar" does not necessarily mean identical, but is defined as " 'Nearly corresponding; resembling in many respects; somewhat like; having a general likeness.' " (*Hansen* v. *Waring,* 123 Cal.App.2d 165, 168 [266 P.2d 560].) Webster's Third New International Dictionary defines "similar" as "having characteristics in common; very much alike; comparable; . . . alike in substance or structure; identical. . . ."

■ Consonant with the foregoing definitions we are satisfied that a trailer camp is not of a nature similar to a retail or wholesale store, nor to a storage or service establishment, nor to an industrial or manufacturig use. ■ A "trailer camp," "trailer court" or "trailer park" is defined as "an area where house trailers are congregated"; and a "house trailer" is defined as "a trailer that can be used as living quarters." (Webster, *supra.*) Section 21.44 of the subject

ordinance defines a " 'Trailer Court' " as "Land or premises used or intended to be used, let or rented for occupancy by or of trailers or movable dwellings, rooms or sleeping quarters of any kind." ▮▮▮ The use to which trailers and trailer camps are put, and particularly their use primarily for living quarters, is a matter which involves such a substantial number of people in this country and is of such common knowledge that we may take judicial notice of it. (See *Irwin* v. *Phillips,* 5 Cal. 140, 146 [63 Am.Dec. 113]; *People* v. *Mangum,* 31 Cal.App.2d 374, 382 [88 P.2d 207]; *City of San Diego* v. *Van Winkle,* 69 Cal.App.2d 237, 239 [158 P.2d 774].) ▮▮▮ It is a basic rule of statutory construction, moreover, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. ▮▮▮ In so construing a statute, a court should not seek hidden meanings not suggested by the statute. (*Chavez* v. *Sargent,* 52 Cal.2d 162, 203 [339 P.2d 801]; *Benson* v. *Superior Court,* 214 Cal.App.2d 551, 558 [29 Cal.Rptr. 760]; *People* v. *Knowles,* 35 Cal.2d 175, 183 [217 P.2d 1]; *In re Miller,* 31 Cal.2d 191, 198 [187 P.2d 722].)

▮▮▮ It is an equally basic rule of statutory construction that when called upon to construe a statute the court should do so in accordance with the intent of the framers of the statute so as to effectuate the purpose sought to be achieved and avoid the evils desired to be eliminated. (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672]; *Benson* v. *Superior Court, supra,* p. 558; *Lesem* v. *Board of Retirement,* 183 Cal.App.2d 289, 298 [6 Cal.Rptr. 608].) A perusal of the subject ordinance discloses a studied legislative attempt to avoid use of property zoned M-1 for living quarters or for residential purposes. While single-family, two-family, and multiple-family residences are permitted in retail (C-1) and wholesale (C-2) commercial zones, these uses are not permitted in an M-1 industrial zone. Nor is the "trailer camp" use which is specifically permitted in a C-2 zone extended by the ordinance to an M-1 zone. It is apparent, therefore, that in enacting the ordinance it was the intention of the Council that the uses permitted in an M-1 zone should not include uses for residences, dwellings or living quarters. It is equally apparent from the ordinance that the Council intended to create an M-1 zone for essentially industrial purposes and that the possible danger to health if persons were permitted to reside on property which was so zoned, particularly in view of the inherent noxiousness of uses such as those permitted in an M-1 zone by virtue of the

provisions of section 10.2, subdivisions (a) and (b) of the ordinance, was an evil which the framers of the ordinance sought to avoid. We accordingly conclude that the determination of the Commission to permit a trailer camp or trailer court in an M-1 zone was not in conformance with the provisions of the ordinance and, therefore, null and void. The Inspector was, therefore, justified in refusing to issue the building permit for that reason, and not upon the misconceived basis that the action of the Commission required the approval of the Council.

In view of the conclusion reached by us we need not dwell upon appellants' contention that respondents did not exhaust their administrative remedies because they did not seek to amend the ordinance so as either to have their property classified as C-2, or to have "trailer camp" specifically included as a permitted use under section 10.1. Suffice it to say, the amending of an ordinance is a legislative and not an administrative act. (*Banville* v. *County of Los Angeles,* 180 Cal.App.2d 563, 570 [4 Cal.Rptr. 458].)

The judgment is reversed with directions to the trial court to amend its conclusions of law to provide that respondents are not entitled to a peremptory writ of mandate and to enter judgment in favor of appellants denying respondents a peremptory writ of mandate and discharging the alternative writ.

Sullivan, P. J., and Sims, J., concurred.

A petition for a rehearing was denied October 22, 1965.