[Crim. No. 9700. Third Dist. Nov. 28, 1978.]

In re MICHAEL ALAN DAVIS, a Minor, et al. on Habeas Corpus.

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, and Tom Lundy, Deputy State Public Defender, for Petitioners.

## OPINION

**EVANS, J.**—The California Youth Authority appeals from a habeas corpus order directing that previously fixed parole consideration hearing dates, formerly referred to as "a continuance date," be advanced by the time the respondents had been subject to precommitment detention prior to their commitment to the Youth Authority.

The only contention presented is whether the parole consideration date is in fact a parole release date for which confinement credit must be applied pursuant to Penal Code section 2900.5.

Prior to disposing of the primary issue presented, we reject respondents' suggestion that our review of the ruling is limited to a determination of whether there is sufficient evidence to support the trial court's order. That order was predicated upon an interpretation of sections 30 and 31 of the California Youth Authority Board Policy Manual. Inasmuch as an interpretation of a regulation or statute is involved, the question is one of law, not fact. We are not limited as respondents argue by the trial court's conclusion. (See *Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839]; *County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 668 [114 Cal.Rptr. 283]; *Plum* v. *City of Healdsburg* (1965) 237 Cal.App.2d 308 [46 Cal.Rptr. 827]; see also *People* v. *Carr* (1974) 43 Cal.App.3d 441, 444 [117 Cal.Rptr. 714].)

The authorities relied upon by respondents in support of their argument that we are limited in our review by the conclusion of the trial court are inapposite, as each involves appellate review of a trial court's resolution of a question of fact. (See *People* v. *Valdez* (1962) 203 Cal.App.2d 559, 562, 563-564 [21 Cal.Rptr. 764] [consent]; *People* v. *Castaneda* (1969) 1 Cal.App.3d 477, 484-485 [82 Cal.Rptr. 205] [probable cause]; *People* v. *Walker* (1973) 32 Cal.App.3d 897, 903-906 [108 Cal.Rptr. 548] [evidence did not justify instruction on diminished capacity and in any event diminished capacity was not relevant to issue of self-defense]; *People* v. *Mulqueen* (1970) 9 Cal.App.3d 532, 541 [88 Cal.Rptr. 235], and *People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382] [sufficiency of evidence to sustain conviction].)

Respondent, Michael Alan Davis, a minor, was initially committed to the Youth Authority on April 2, 1976, following his conviction of first degree burglary. On September 6, 1976, approximately three months after his release on parole, he was apprehended and thereafter convicted for an act of forcible rape and false imprisonment, and was recommitted to the Youth Authority on April 21, 1977. The Youth Authority set Davis' maximum term at four years and gave him a credit of seven months and ten days for time served prior to commitment, thus reducing his maximum term to three years, four months, and twenty days, which expires on September 8, 1981. However, his maximum release date was scheduled for the earlier date of August 30, 1981, by reason of his age. His parole consideration hearing date is scheduled for May 1979.

Fred Leon Jackson, Jr., was first committed to the Youth Authority on June 18, 1975, upon a finding that he was a minor within the provisions of

Welfare and Institutions Code section 602 as a result of his commission of an armed robbery. Within three months of his parole from the Youth Authority, he was arrested for second degree robbery. Upon his plea of guilty, he was convicted and committed to the Youth Authority April 4, 1977. His term was set at three years, and he was given a credit of four months and twenty-four days for time served prior to the commitment resulting in a maximum Youth Authority confinement term of two years, seven months, and six days. His maximum release date was fixed as November 11, 1980, and his continuance date, or parole consideration hearing date, was set for April 1979.

Melvin Murphy was involved in a homicide and was committed to the Youth Authority for second degree murder in exchange for his testimony. The Youth Authority set his term at six years, and gave him credit for one year, four months, and twenty-four days served prior to the commitment. His maximum release date was fixed at November 25, 1982, and his parole consideration hearing date is set for April 1980.

Following the Youth Authority's refusal to advance the parole consideration hearing date (formerly continuance date) by the time served prior to their respective commitments, respondents filed their petition for writ of habeas corpus in the Sacramento Superior Court. That court granted the petition and directed the Youth Authority to apply the provisions of Penal Code section 2900.5 and credit precommitment detention time to advance the parole consideration date accordingly.

From that order this appeal was taken.[1]

The issue framed by respondents is neither novel nor new; it has been previously considered and rejected by the appellate court. In *In re Keele* (1975) 53 Cal.App.3d 70 [125 Cal.Rptr. 492], petitioner sought to have the "back time credit" provision of Penal Code section 2900.5 applied to advance his "continuance date." In denying that request the court determined that section 2900.5, subdivision (a) of the Penal Code, requires that in all felony convictions, the time defendant spends in

---

[1]On May 23, 1978, this court denied appellant's application for a stay of execution of the superior court order granting a writ of habeas corpus and ordering that respondents' parole consideration dates be advanced by periods equivalent to their time in precommitment detention. In doing so, we cautioned that the stay was not to be construed as an indication of the merits on appeal. The order provided in part: "In the event the action of the trial court is reversed and, pending reversal, the petitioners, or any of them, are released on parole under authority of the superior court order, they will be subject to return to custody to serve any time with which they were erroneously credited."

custody following arrest to the date service of the sentence imposed commences shall be credited upon the sentence.

The court in *In re Keele,* at pages 72-73 and 77 stated:

"In *In re Grey,* 11 Cal.3d 554, 555 [114 Cal.Rptr. 104, 522 P.2d 664] and *In re Kapperman,* 11 Cal.3d 542, 546-547 [114 Cal.Rptr. 97, 522 P.2d 657], the California Supreme Court held that section 2900.5, Penal Code applies to a state prison inmate's minimum term, his maximum term, except where the maximum is life, and his minimum eligible parole date. . . .

"Petitioner's commitment has neither a statutory minimum term nor a minimum eligible parole date (see §§ 1711.3, 1766, subd. (a)(1), 1766, subd. (a)(6), Welf. & Inst. Code). Thus petitioner was eligible for release on parole at the time of the Youth Authority Board hearing of January 8, 1975, when the above continuance date was set. The Youth Authority Board is required to determine parole releases, discharges, and the like on an individual basis for each minor. (See *Bryan* v. *Superior Court,* 7 Cal.3d 575, 585 [102 Cal.Rptr. 831, 498 P.2d 1079]; *In re Minnis,* 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997].) It would appear therefore that section 2900.5, Penal Code, as interpreted in the cases hereinabove cited, has no application to petitioner's continuance date. . . .

". . . . . . . . . . . . . . . .

"We conclude that application of the 'back time credit' provision of 2900.5, Penal Code to petitioner's present continuance date to be improper and an unwise restriction upon the Youth Authority Board's duty to consider each case before it on its individual facts. (See *Bryan* v. *Superior Court,* 7 Cal.3d 575, 585 [102 Cal.Rptr. 831, 498 P.2d 1079].)"

Subsequent to the decision in *In re Keele, supra,* section 2900.5 was amended in part to read, "For the purposes of this section, 'sentence' . . . includes any term of imprisonment, including any period of imprisonment prior to release on parole . . . whether established or fixed by statute, by any court, or by any duly authorized administrative agency."

The parole consideration date is neither a parole release date, a term, or a sentence. It is a date for further review, subject to change by the Youth Authority depending upon the rehabilitation process of the ward.

Moreover, pursuant to Welfare and Institutions Code section 1762, wards must be considered for parole at least annually. The parole consideration date is merely an additional review of parole readiness based upon the ward's projected rehabilitation progress. It is not an inflexible time but may, within the principles of the rehabilitation program of the Youth Authority, be modified to reflect the needs of the ward.

In this instance, it is undisputed that respondents have each had their terms fixed as required by the mandate of *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], and have received Penal Code section 2900.5 (as amended) credit for precommitment detention. (See *People* v. *Sandoval* (1977) 70 Cal.App.3d 73 [138 Cal.Rptr. 609].) The credits were applied against their maximum terms, as they were fixed. Each of them, in contrast to adults committed to the adult authority system, was eligible and considered for parole at the time of his commitment. Parole was rejected at that time but they were nonetheless eligible and considered; annually, that parole consideration must be reviewed. To accept and adopt the contention presented that the parole hearing date is the equivalent to a minimum parole discharge date would inject by judicial decision a new regulation in the Youth Authority Board Policy Manual that would anathematize the principles of the rehabilitative function of the Youth Authority.

The function of the Youth Authority is specifically prescribed by statute. The statute states, inter alia: "When a person has been committed to the authority, it may . . . (b) Order his confinement under such conditions as it believes best designed for the protection of the public, except that a person committed to the Youth Authority pursuant to Sections 731 or 1731.5 may not be held in physical confinement for a total period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which . . . resulted in the commitment of the young adult to the Youth Authority." (Welf. & Inst. Code, § 1766, subd. (b).) "The following powers and duties shall be exercised and performed by the Youth Authority Board . . . discharge of commitment, orders to parole and condition thereof, revocation or suspension of parole, recommendation for treatment program, [and] *determination of the date of next appearance,* . . ." (Italics added.) (Welf. & Inst. Code, § 1711.3.)

As the parole consideration hearing dates do not exceed the maximum permissible terms of imprisonment, and the regulations are obviously within the powers of the Youth Authority Board, these rules and

regulations have the force and effect of law. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]; *Dabis* v. *San Francisco Redevelopment Agency* (1975) 50 Cal.App.3d 704, 706 [122 Cal.Rptr. 800]; *Zumwalt* v. *Trustees of Cal. State Colleges* (1973) 33 Cal.App.3d 665, 675 [109 Cal.Rptr. 344]; see Gov. Code, § 11374.)

For the foregoing reasons and the principles stated in *In re Keele, supra,* 53 Cal.App.3d 70, the order granting the petition for habeas corpus is reversed, and the trial court is directed to enter a contrary order.

Puglia, P. J., and Janes, J., concurred.

A petition for a rehearing was denied December 27, 1978, and petitioners' application for a hearing by the Supreme Court was denied January 24, 1979.