[L.A. No. 31081. July 26, 1979.]

JAY S. BULMASH et al., Plaintiffs and Respondents, v.
ALLEN V. C. DAVIS, Defendant and Appellant.

LEXTON-ANCIRA REAL ESTATE FUND LTD., 1972,
Plaintiff and Respondent, v.
ALLEN V. C. DAVIS, Defendant and Appellant.

## COUNSEL

Kurt J. Lewin for Defendant and Appellant.

Anderson, Ablon & Dennis, Stephen B. Maseda and Charles R. Anderson for Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—We examine the status of a judgment lien pursuant to a judgment that was subsequently vacated. A lien is accessory to the obligation on which it is based; therefore, it would ordinarily be automatically invalid once the judgment was vacated. In the case at bar, however, the vacating order was appealed and reversed; accordingly, the judgment was restored as originally entered, with effect as of the date of entry.

The issue before us is whether a lien pursuant to judgment relates back to the original date of recording after reversal of the order vacating that judgment. We conclude that although such a lien may be applied retroactively if the appealing party had obtained a stay to prevent enforcement of the vacating order, the absence of a stay renders the judgment effectively vacated during the appeal, and the lien recorded pursuant thereto does not constitute a defect on the title to the property during that period. Consequently the lien does not pass with the land.

Defendant Allen Davis appeals from a judgment quieting title and extinguishing his lien in two parcels of real property owned, respectively, by plaintiffs Jay and Linda Bulmash (Bulmash) and plaintiff Lexton-Ancira Real Estate Fund Ltd., (Lexton). The facts and various proceedings are convoluted but relevant to the issues we must unravel. In March 1972 defendant commenced an action on a promissory note against Jeff, Evelyn, and David Kay, plaintiffs' predecessors in interest. A motion for summary judgment was made by defendant in July 1972; the Kays did not appear at the hearing on the motion and it was subsequently granted, with judgment entered in the amount of $130,370. Defendant immediately recorded the judgment.

Two weeks later the Kays moved to vacate the judgment on the ground of secretarial error in calendaring the hearing. Their motion was granted,

and the trial court denied defendant's request that the Kays be required to post a bond as security for any judgment he might later obtain. On August 15, 1972, defendant filed a notice of appeal with the superior court.

While the appeal was pending the Kays made arrangements for the sale of certain of their properties to third persons. In September 1972 plaintiff Lexton received a preliminary title report prepared by West Coast Title Company concerning the Pacific Trade Center, on which the Kays held a purchase option.[1] The title report contained no mention of the Davis judgment. In preparing the report, West Coast Title discovered the recorded judgment and learned of the vacating order through a search of the superior court file; however, the agent for the company apparently did not observe the notice of appeal which also should have been in that file.

In January 1973 the option to buy the Pacific Trade Center was purchased by plaintiff Lexton for $674,850. Lexton then paid the option price of $570,000 for the trade center in February 1973. At no time prior to the acquisition did plaintiff Lexton receive notice, nor did it have actual knowledge of defendant's recorded, vacated judgment.

Several months after the transfer of the property to Lexton its president discovered that no policy of title insurance had been issued by West Coast Title. Lexton subsequently contacted Title Insurance and Trust Company to obtain a policy, and was informed by the latter that a policy could issue only if defendant's judgment were excepted therefrom. However, when West Coast Title agreed to indemnify Title Insurance and Trust against any damage or loss resulting from defendant's judgment, a complete title insurance policy was issued.

In April 1973 plaintiffs Bulmash purchased a single family dwelling from the Kays. The preliminary title report was issued by West Coast Title in February and again no mention was made of defendant's judgment. As a result plaintiffs Bulmash also lacked actual knowledge of the potential lien on their property.

---

[1]Defendant challenges the finding of the court that the Kays held an option on the Pacific Trade Center, rather than owning it outright. It appears that at one time the Kays owned the center and transferred it to MBXXI, plaintiffs' grantors. Defendant maintains that MBXXI was merely a "convenient strawman" so that the Kays must be considered the true grantors of the property. Because a lien may be placed on an option to purchase real property (Civ. Code, § 2883), the point is irrelevant to the issues herein.

Meanwhile the appeal proceeded. In October 1973 the Court of Appeal ruled in favor of defendant and ordered the vacated judgment to be restored and entered. (*Davis* v. *Kay* (1973) 34 Cal.App.3d 680, 684 [110 Cal.Rptr. 198].) Defendant then levied on the properties purchased from the Kays by plaintiffs Bulmash and Lexton, thereby triggering these quiet title actions. The two separate lawsuits were later consolidated for trial.

Defendant cross-complained, alleging that the conveyance from the Kays to Lexton was fraudulent and made with the intent to avoid defendant's judgment lien. The cross-complaint averred that Lexton had actual knowledge of the judgment lien and of the appeal of the vacating order. The corresponding allegations in the Bulmash action were founded entirely on constructive knowledge and vicarious liability.

The trial court found that neither plaintiffs Lexton nor Bulmash had knowledge of the recorded, vacated judgment, and that the transfer of the two properties was not made with the intent to defraud the Kays' creditors. The court concluded that plaintiffs acquired title to the properties free and clear of all encumbrances because defendant's judgment against the Kays was of no legal effect between the date of the vacating order and the date the judgment was reinstated. Judgment was entered accordingly and this appeal followed.

I

Defendant contends that the order vacating the judgment cannot operate automatically to extinguish a lien properly obtained thereunder. This contention is based on Code of Civil Procedure section 674, which delineates the creation, duration and discharge of a judgment lien, and provides for the creation of a lien by recording a judgment "the enforcement of which has not been stayed on appeal." The lien continues for 10 years "unless the judgment or decree is previously satisfied, or the lien otherwise discharged." Defendant asserts that the statute requires formal proceedings to remove a lien from the record and that his lien remained effective because plaintiffs did not provide for its extinction by furnishing a stay bond. In urging this application of section 674, defendant presumes that the lien was valid after the vacating order. The statute, however, clearly assumes the existence of a valid judgment and was not intended to relate to the instant circumstances. Defendant's analysis thus begs the question now before us: the validity of the lien during the pendency of the appeal.

■ In analyzing the status of a judgment lien during appeal, initially it must be recognized that the lien is entirely dependent on the judgment. It is "to be deemed accessory to the act for the performance of which it is a security, . . . and is extinguishable in like manner with any other accessory obligation." (Civ. Code, § 2909.) A lien therefore cannot exist apart from the judgment upon which it is based. Thus, in the ordinary course of events when the judgment is vacated by court order the lien will also cease to exist, because the effect of a vacating order is to eliminate the judgment. (*Lantz* v. *Vai* (1926) 199 Cal. 190, 193 [248 P. 665].) Once vacated, the status of the parties that existed prior to the judgment is restored and the situation then prevailing is the same as though the order or judgment had never been made. (*Sherwin* v. *Southern Pacific Co.* (1914) 168 Cal. 722, 724 [145 P. 92].)

■ Defendant contends, however, that his appeal of the vacating order reinstates the judgment and thus the lien remained valid and enforceable during the appeal. It is true that a judgment is reinstated when an appeal is taken from the order vacating it, but only for certain limited purposes, e.g., the party against whom the judgment was entered may cross-appeal from the judgment when his opponent appeals from the vacating order. (*Pierce* v. *Birkholm* (1896) 110 Cal. 669, 671 [43 P. 205].) The judgment remains alive for these limited purposes alone and is not enforceable during the appeal period; the judgment no longer exists "so far as the assertion of any rights under it is concerned." (*Estate of Crozier* (1884) 65 Cal. 332, 333 [4 P. 109].)

Because the judgment could not be enforced once it was vacated, the lien also became ineffective. Accordingly, the land was not subject to a lien at the time of its transfer.[2] Were this not the rule, the lien would

---

[2]This conclusion is buttressed by an examination of a similar rule in attachment law. The remedy of attachment, like a judgment lien, is created by statute and is likewise a means of securing payment of the judgment rendered. (Code Civ. Proc., § 484.010 et seq.) Attachment, however, operates to secure payment prior to the time liability is determined, i.e., in advance of trial. Judgment in favor of defendant operates to discharge the attachment 10 days after such judgment is entered (Code Civ. Proc., §§ 488.570, 489.410), and this is so even if an appeal is taken from the judgment or the judgment is vacated. (*Hamilton* v. *Bell* (1898) 123 Cal. 93, 95 [55 P. 758]; *Clark* v. *Superior Court* (1918) 37 Cal.App. 732, 734 [174 P. 681].)

We discussed the rationale for this rule nearly a century ago in *Loveland* v. *Mining Co.* (1888) 76 Cal. 562 [18 P. 682]. In that case plaintiff filed suit and attached defendant's personal property. After judgment for defendant and during plaintiff's appeal, defendant transferred the property to a third party. When the judgment was reversed plaintiff attempted to execute the levy on the transferred property. We refused to compel execution because the attachment was ipso facto dissolved by the judgment. "The defendant . . . after judgment in his favor, could make any disposition of the property

operate to restrain alienation because the value of the property could not be correctly ascertained until the Court of Appeal reached its decision on the propriety of the vacating order.

■ Defendant argues, in the alternative, that even if the lien was not effective during the appeal, it must be retroactively enforced and therefore considered to have been in effect when the land was transferred. He relies on Code of Civil Procedure section 908 for this proposition; it declares that a party who prevails on appeal may be entitled to "restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties. . . ." With respect to the rights of plaintiffs as third parties, defendant contends that to be protected by this section they must have been bona fide purchasers. Because at the very least plaintiffs had constructive notice of the appeal, defendant argues, they took the properties subject to the defect in their title—defendant's lien.

Because of our conclusion that the lien no longer existed, however, there was no defect in plaintiff's title of which they could have had notice. Defendant's right to restitution cannot be extended to the enforcement of a lien against third parties who purchased property after the judgment upon which the lien was based had been vacated, and plaintiffs were entitled to rely on the order regardless of its future potential reversal. The rules governing the rights of a party under an erroneous judgment are thus irrelevant to the facts of this case.

Moreover, we do not believe that our denial of relief in these circumstances will impose any undue hardship on judgment creditors. Here, defendant had the ability to protect his rights after the vacating order by requesting a stay of that order. (Code Civ. Proc., § 918.)[3] Had he requested and obtained a stay, he would have been allowed to retain his lien by filing an undertaking insuring that he would pay all costs and

---

which he could have made before it was attached, with like force and effect." (*Id.,* at p. 565.) Similarly, in *Clark* v. *Superior Court, supra,* 37 Cal.App. at page 734, the court held the effect of a nonsuit for defendant was to dissolve the attachment, even though the nonsuit was later reversed. "But such order [of reversal] could not, in the absence of statutory provision therefor, revive the lien of the attachment which had theretofore been dissolved by the judgment in favor of defendants, and which, in so far as concerned the attachment, had become final."

[3]As a self-executing judgment, the vacating order was not automatically stayed on appeal. (Code Civ. Proc., § 916; *Boggs* v. *North American Bond Etc. Co.* (1936) 6 Cal.2d 523, 525 [58 P.2d 918].)

damages which the plaintiffs would sustain by reason of the lien in the event that the order of the court below were sustained in favor of plaintiffs. (Cf. Code Civ. Proc., § 921.) Because no stay order was even requested, however, the vacated judgment was invalid during the appeal and there was no defect in the property at the time it was transferred.

Thus, we hold the lien cannot be applied retroactively against the Kays' grantees, and it did not retain its priority with respect to any property still owned by the Kays despite the appellate court's ultimate decision to reinstate the original judgment.

## II

■ Defendant presents several other grounds for relief that also lack merit. He contends the conveyance of the properties to plaintiffs was fraudulent, i.e., that the transfers were made with the intent to hinder, delay, or defraud plaintiffs' grantors' creditors (Civ. Code, § 3439.07).[4] This is an issue of fact, and "[i]ts proof is peculiarly dependent upon the circumstances which surround the questioned transaction, and the inferences which the trier of fact may reasonably draw therefrom." (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co.* (1963) 214 Cal.App.2d 826, 844-845 [29 Cal.Rptr. 887].) The trial court found the properties were conveyed without fraudulent intent; we are bound by that finding if it is supported by substantial evidence. (*Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 7 [106 Cal.Rptr. 761, 507 P.2d 65].)

Defendant asserts that the record is clear as to West Coast Title's intent to defraud him, but he fails to provide any support for this contention. With inconsistency he also claims he was denied the opportunity of proving his allegations of fraud. Our examination of the record discloses the assertion is without merit.

Defendant discusses several instances in which the trial judge sustained objections made by opposing counsel to the admission of evidence. The objections were based on various grounds, including relevance, hearsay, and that the question asked called for the witness to draw a legal conclusion. ■ Defendant provides no authority showing the rulings

---

[4]"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." (Civ. Code, § 3439.07.) And Civil Code section 3439.09 states that a fraudulent conveyance allows a creditor to set aside the conveyance, or levy execution upon the property conveyed, except against a bona fide purchaser.

were in error; rather, he apparently is challenging the relevance determinations. The judge sustained these objections because they were directed at actions taken by West Coast Title many months after the transfer of the property; they were therefore not relevant to the issue of West Coast Title's intent at the time of the conveyances. It does not appear that the court failed to allow the introduction of evidence that was relevant to this latter issue. Indeed, the record is replete with defendant's evidence attempting to show fraud on the part of West Coast Title. Three of its officers were called by defendant and allowed to testify at length about the transactions herein involved. Defendant thus had the opportunity to persuade the trial court of the truth of his factual allegations and failed to do so. Therefore, we conclude that the finding of lack of fraud is supported by substantial evidence, and that the court did not improperly bar the admission of evidence relevant to that determination.

### III

Defendant's third contention is founded in equity, and essentially equates to the simple maxim, "One cannot obtain equity without offering to do equity." An action to quiet title, where possession is not involved, lies in equity (*Thomson* v. *Thomson* (1936) 7 Cal.2d 671, 681 [62 P.2d 358, 117 A.L.R. 1]); defendant argues that plaintiffs are precluded from obtaining equitable relief by their failure to contact defendant prior to the transactions to discuss the sequestering of funds in the escrow in order to protect defendant's lien. Defendant's argument assumes plaintiffs had actual notice of his alleged lien. The trial court, however, found that plaintiffs lacked such notice. We cannot insist that an unknowing plaintiff do more equity than his knowledge of the facts compels.

### IV

■ Defendant's next contention is that the trial court failed to make findings on all the issues tendered by the pleadings. Code of Civil Procedure section 632 states, "Where findings are required, they shall fairly disclose the court's determination of all issues of fact in the case." Defendant argues the trial court's failure to make specific findings on the agency relationship between West Coast Title and plaintiffs was in violation of this section, given that an alleged fraudulent conveyance was an issue raised by his pleadings.

Section 632, however, requires findings of ultimate, rather than evidentiary, facts (*Seeley* v. *Combs* (1966) 65 Cal.2d 127, 132 [52 Cal.Rptr.

578, 416 P.2d 810]), because such findings include by necessary intendment the findings on all intermediate evidentiary facts necessary to sustain them. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 274 [137 Cal.Rptr. 855].) The issue, then, is whether the facts found by the trial court are sufficient to adjudicate the essential elements of the challenged defense.

After hearing evidence regarding West Coast Title's actions, the court determined all the material issues involved in the fraudulent conveyance defense by its findings of lack of actual notice, lack of fraudulent intent, lack of contact with defendant or his attorney, and the acquisition of the property for good and sufficient consideration. (Civ. Code, § 3439.07.) It appears that the court considered West Coast Title's actions in this context as well as those of the other parties involved. Defendant was entitled to no more.

The memorandum of intended decision of the trial court stated, "The central question in each case is whether the judgment lien had any legal effect after the court order vacating that judgment was entered, and until the latter order was reversed on appeal. If the answer is in the negative, then the other issues presented by the parties become immaterial." Defendant challenges the memorandum and subsequent findings; it appears he believes the memorandum reveals that the court did not consider the fraudulent conveyance issue. However, a finding was ultimately provided by the court regarding the issue. A memorandum cannot be employed to impeach findings, which embody ". . . the conclusions of the trial court on all questions of fact submitted to it for decision." (*Strudthoff* v. *Yates* (1946) 28 Cal.2d 602, 616 [170 P.2d 873].)

## V

At the conclusion of the trial, during final argument, defendant requested leave to amend his cross-complaint and add West Coast Title Company as a cross-defendant. The motion was denied and defendant now contends the denial was error. Although the basis for his contention is not entirely clear, defendant apparently believes the trial court erred by not allowing him to introduce further evidence regarding West Coast Title's actions. The contention is without merit. Defendant stated at the time of his motion that he had no further evidence to introduce regarding West Coast Title, and that naming it as a party was a "technicality." He produced no justification for the long delay and thus the court determined that at that late date the amendment would be unduly prejudicial

to West Coast Title. The determination was within the court's discretion and was not an abuse thereof. (Code Civ. Proc., § 473; *Brown* v. *Aguilar* (1927) 202 Cal. 143, 149 [259 P. 735].)

The judgment is affirmed.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.