[Civ. No. 50130. First Dist., Div. Four. Mar. 8, 1983.]

WALTER W. WALLACE et al., Plaintiffs and Appellants, v.
VALDON MILLER, Defendant and Respondent.

## COUNSEL

Francis B. Mathews for Plaintiffs and Appellants.

Dunaway, Davis, McClendon & Poovey for Defendant and Respondent.

## OPINION

**RATTIGAN, Acting P. J.**—At all times pertinent to this action, plaintiffs and appellants Walter W. Wallace and Marion V. Wallace (plaintiffs) owned and lived on a parcel of land in Del Norte County. Defendant and respondent Valdon Miller operated a rock quarry on an adjacent parcel, which he leased

from defendant Robert Stary (who has not appeared on the appeal). Plaintiffs brought this action against both defendants, seeking (1) to enjoin the blasting of dynamite at the quarry and (2) to recover damages allegedly incurred as the result of blasting.

The trial court successively issued temporary restraining orders and a preliminary injunction; tried the action as to injunctive relief only; determined that plaintiffs were not entitled to enjoin the blasting; and entered a judgment dissolving the preliminary injunction and denying injunctive relief. Miller and Stary then made separate motions "to enforce liability" pursuant to Code of Civil Procedure section 535 as it read at the time. (See fns. 3 and 6, *post.*) After further proceedings, the trial court granted both motions and made an order awarding damages and attorneys' fees to Miller and Stary. Plaintiffs appeal from the order.

### Procedural Sequence

We summarize only the principal features of this sequence, which covered a period of almost five years. The following events occurred in 1975:

Plaintiffs commenced the action by filing a verified "Complaint For Injunction And Damages" against defendants on June 19. On June 20, acting on the verified complaint, the trial court issued an ex parte "Order To Show Cause And Temporary Restraining Order" in which defendants were restrained from blasting dynamite at the quarry pending a hearing on the order to show cause which was set for July 11. At the hearing on July 11, the court vacated the temporary restraining order, and discharged the order to show cause, for procedural reasons. On July 14, the court issued a similar temporary restraining order and another order to show cause which was set for hearing on July 25.

Prior to July 25, plaintiffs also applied for a preliminary injunction. The application was heard on July 25 with the second order to show cause. In a written "Ruling On Application For Preliminary Injunction" filed on August 15, the court ordered in pertinent part: ". . . [T]he Court is of the opinion that the injunction should not issue as prayed . . . . The injunction . . . will issue to the extent of limiting the size of defendants['] blasts to a maximum of 2,000 lbs pending final hearing . . . ."

A preliminary injunction restraining defendants to this extent was issued on August 15.[1] Miller had meanwhile filed an answer to the complaint on July 18. Stary filed an answer on November 1, 1976.

---

[1]The preliminary injunction has been omitted from the record on appeal, and plaintiffs state in their opening brief that the trial court "denied" it. The "Ruling" just quoted in the text establishes that the court denied a preliminary injunction "as prayed," but that it issued the

The action was called for trial by the court on August 18, 1977. Counsel for the parties stipulated in open court "that the issue of damages was settled and would be dismissed with prejudice." The issues pertaining to injunctive relief were thereupon tried and submitted.

On November 22, 1977, plaintiffs filed a request for dismissal "as to [the] Complaint for . . . damages only," adding that "the issue of whether an injunction should issue is still before the Court." The requested dismissal was entered by the clerk on the same day.

On February 7, 1978, the trial court filed a memorandum decision in which it stated in pertinent part that plaintiffs were "not entitled to the requested injunction" and that judgment would be in favor of the defendants.

On September 29, 1978, the court signed and filed findings of fact and conclusions of law consistent with the memorandum decision. On the same day, the court entered a judgment denying injunctive relief.[2]

On October 10, 1978, defendant Miller served and filed notice of a "Motion To Determine And Enforce Liability For Wrongfully Issued Temporary Restraining Order." In the notice, he recited the history of both temporary restraining orders issued in 1975; their dissolution; and the "final Judgment[ ] determin[ing] that plaintiff [sic] was not entitled to the temporary restraining order or preliminary injunction." He also stated in the notice that the "wrongful issuance of the . . . [temporary] . . . restraining orders" had "damaged" him in the sum of $18,750. The notice was accompanied by a memorandum of points and authorities in which Miller stated in effect that the motion was made pursuant to Code of Civil Procedure section 535 as it read in 1978.[3]

---

limited preliminary injunction described. There is no indication in the record that the court required a bond or undertaking as a condition of the preliminary injunction, or that any such security was provided by plaintiffs or requested by defendants. (See fn. 6, *post.*)

[2]The judgment provided in pertinent part: "It Is Hereby Ordered, Adjudged and Decreed that plaintiffs are not entitled to an injunction; [¶] It Is Further Ordered that the preliminary injunction . . . filed on August 15, 1975, . . . is hereby dissolved . . . ." (See fn. 1 and the accompanying text, *ante.*)

[3]Statutory citations after this point are to the Code of Civil Procedure. At all pertinent times during the pendency of this action, and until January 1, 1983 (see fn. 6, *post*), section 535 provided in full as follows:

"535. Whenever any security is given in the form of a bond, undertaking, or deposit pursuant to Section 1054a for the issuance of any temporary restraining order or preliminary injunction, each surety or, in the case of a deposit pursuant to Section 1054a, the party who makes such deposit, submits himself to the jurisdiction of the court in all matters affecting his liability on the bond, undertaking, or deposit. After trial and final decision that the party in whose behalf such restraining order or injunction was issued was not entitled thereto, the liability of such party and his surety or sureties, if any, may be enforced on motion filed in the trial court, without the necessity of an independent action. Notice of the motion shall be served on the persons whose liability is sought to be enforced at least 30 days prior to the time set for hearing on the motion.

At a hearing on the motion conducted on November 30, 1978, counsel "stipulated that the issue be limited to liability, the matter to be reset for hearing as to damages if liability found."

In a written "Ruling On Motion" filed on May 8, 1979, the trial court granted the motion and ordered "the issue of the amount of damages" reset for hearing.

On June 1, 1979, defendant Miller served and filed a substantially identical notice of motion in which he reiterated his claim that the "wrongful issuance" of the temporary restraining orders in 1975 had "damaged" him in the amount of $18,750.

On June 12, 1979, defendant Stary served and filed a similar notice of motion and a declaration executed by him in its support. Stary claimed in these papers that the "wrongful issuance" of the temporary restraining orders had "damaged" him in the amount of $4,150.

The two motions were heard and submitted on July 13, 1979. In a written "Ruling" filed on December 13, 1979, the trial court ordered that defendant Miller was to be awarded $5,100 in damages and $1,750 as attorneys' fees and that defendant Stary was to be awarded $1,700 in damages and $500 as attorneys' fees.

On January 29, 1980, the court signed and filed a formal order awarding the specified sums to both defendants. Plaintiffs filed a timely notice of appeal from the order.[4] Defendant Miller has appeared in this court as the sole respondent on the appeal.

---

The notice shall state the amount of the claim and shall be supported by affidavit or affidavits setting forth the facts on which the claim is based. Judgment may be entered in accordance with the notice against the person or persons served therewith, unless such person or persons shall serve and file an affidavit or affidavits in opposition to the motion showing such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. If such showing is made, the issues to be tried shall be specified by the court and trial thereof shall be set for the earliest date convenient to the court, allowing sufficient time for such discovery proceedings as may be requested. Trial by jury shall be waived unless demand therefor is served and filed not later than 10 days after notice of the order fixing the trial date. Affidavits filed pursuant to this section shall conform to the standards prescribed for affidavits filed pursuant to Section 437c."

Section 1054a was also in effect at all times during the pendency of this action. (See fn. 6, *post.*) It then provided in pertinent part that "[i]n all civil cases" a party who is required to furnish "an undertaking" could satisfy the requirement by depositing the designated amount with the court, in cash or bearer bonds, "in lieu thereof."

[4]The order is appealable as "an order made after [a] final judgment" which was appealable. (See Code Civ. Proc., § 904.1, subds. (a), (b).)

I

■ We first examine a contention by Miller that the appeal should be dismissed because plaintiffs have made statements in their opening brief without citing the record in compliance with rule 15(a), California Rules of Court.[5] Plaintiffs have in fact violated rule 15(a) as claimed, but this does not mean that their appeal should be dismissed. Although the record is long, the material statements made in the opening brief may readily be verified in it. Miller himself has violated rule 15(a) by citing the record inaccurately. We therefore reject his contention regarding dismissal, disregard the defects in both briefs, and decide the appeal on its merits. (See rule 18; *Richmond Redevelopment Agency* v. *Western Title Guaranty Co.* (1975) 48 Cal.App.3d 343, 347 [122 Cal.Rptr. 434].)

II

■ Plaintiffs point out that no bond or undertaking was "posted" when the temporary restraining orders or the preliminary injunction were issued in 1975. (See fn. 2, *ante.*) They contend that the order under review must consequently be reversed because "[e]nforcement of liability pursuant to . . . [Code of Civil Procedure] . . . section 535 is available only where the plaintiff has filed a surety bond after obtaining a preliminary injunction." This argument reflects a correct interpretation of former section 535.[6] Plaintiffs' claim of reversible error must be sustained accordingly.

Plaintiffs' interpretation of former section 535 is supported by each of three successive decisions in which the statute has been considered. (*Dickey* v. *Rosso* (1972) 23 Cal.App.3d 493 [100 Cal.Rptr. 358]; *Allen* v. *Pitchess* (1973) 36 Cal.App.3d 321 [111 Cal.Rptr. 658]; *Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc.* (1977) 73 Cal.App.3d 376 [140 Cal.Rptr. 757].) The Courts of Appeal respectively stated in these decisions as follows:

---

[5]Citation to a "Rule" is to the indicated provision of the California Rules of Court. Rule 15(a) provides in pertinent part: ". . . The statement [in a brief] of any matter in the record shall be supported by appropriate reference to the record. . . ."

[6]Sections 535 and 1054a (see fn. 3, *ante*) were repealed in a comprehensive 1982 enactment which took effect January 1, 1983. (Stats. 1982, ch. 517, §§ 126, p. 2342, 170, p. 2361.) We accordingly refer to "former" sections 535 and 1054a for purposes of this opinion.

The enactment mentioned was the result of recommendations by the California Law Revision Commission. (See Recommendation Relating to Statutory Bonds and Undertakings (Nov. 1981) 16 Cal. Law Revision Com. Rep. (1982) 503.) In a subsequent 1982 enactment which also took effect January 1, 1983 (Stats. 1982, ch. 998, p. 3659), the Legislature reenacted the substance of former sections 535 and 1054a among various provisions which now appear in chapter 2 ("Bonds and Undertakings," commencing with § 995.010) of title 14 ("Miscellaneous Provisions," commencing with § 989) of the Code of Civil Procedure. The substance of former section 535 appears in present sections 995.040, 996.420, and 996.440. (See 16 Cal. Law Revision Com. Rep. 503 at pp. 573-574.) The substance of former section 1054a appears in present sections 995.160, 995.710, and 995.720. (See *id.*, at p. 580.)

"The . . . [appellants] . . . contend that limitation of damages for improper issuance of an injunction to the amount of the undertaking is an outmoded court-imposed rule which should be revised in conformity with judicial decisions in other jurisdictions. [¶] The contention is without merit. A defendant's common law right to be made whole at the conclusion of litigation is limited to an independent action for abuse of process or malicious prosecution. His right to recover damages caused by an improperly issued injunction[,] on his mere showing that such damage occurred, is a purely statutory rule in California, embodied in Code of Civil Procedure sections 529 and 535 . . . . *Robinson* v. *Kellum* [(1856)] 6 Cal. 399 . . . clearly holds that damages which result from the lawful exercise of process amount to injury without damage, and for such damages a defendant is limited to the remedy provided by statute." (*Dickey* v. *Rosso, supra,* 23 Cal.App.3d 493 at p. 497.)

"Section 535 of the Code of Civil Procedure, which permits a party damaged by the provisional remedy of injunction to recover *from the surety* by motion filed in the action in which the injunction is issued, is a substitute for a common law independent action *against the surety. (Dickey* v. *Rosso,* 23 Cal.App.3d 493, 497.) The action to recover on the bond thus commences when the motion is filed in lieu of the common law independent lawsuit." (*Allen* v. *Pitchess, supra,* 36 Cal.App.3d 321 at p. 329 [italics added; parallel citation omitted].)

"The right to recover damages caused by an improperly issued injunction on the mere showing that such damages were incurred is a statutory procedure provided in California as an action *on the bond* (Code Civ. Proc., §§ 529, 535). This statutory procedure, which provides for a separate trial *against the surety,* may be invoked after the decision on the injunction becomes final (*Allen* v. *Pitchess* (1973) 36 Cal.App.3d 321). *The right to recovery is then limited in amount to the value of the bond (Dickey* v. *Rosso* (1972) 23 Cal.App.3d 493, 498)." (*Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc., supra,* 73 Cal.App.3d 376 at p. 389 [italics added; parallel citations omitted].)

These decisions establish that liability for damages could not be enforced pursuant to former section 535 in the absence of the "bond, undertaking, or deposit" to which the statute referred. (See fn. 3, *ante.*) As we have seen, nothing in the record shows that plaintiffs provided a "bond, undertaking, or deposit" when either of the temporary restraining orders was issued in 1975, or that one was required by the trial court in either instance. Lacking it, defendants' could not validly move to enforce "liability" pursuant to former section 535. The trial court erred in granting their motions.

Miller argues to the contrary on two grounds, of which the first is his interpretation of the second sentence of the statute. (See fn. 3, *ante.*) Referring to the "operative words . . . '. . . the liability of *such party* and his surety or

sureties, *if any,* may be enforced on motion filed in the trial court . . .' " (his italics), he argues as follows:

"First, it is clear that the party referred to is the plaintiff and not the person posting the deposit or bond. This conclusion is inescapable because 'the party' is defined as the one 'in whose behalf such restraining order . . . was issued . . .' In short, the liability described is the liability of the plaintiff or plaintiffs.

"Second, the words 'if any' make no sense and are superfluous if there can only be liability when a bond or other security deposit is posted. . . . [¶] If the construction contended for by Appellants [plaintiffs] is correct then the words 'such party' and 'if any' have no meaning since the party who obtained the restraining order will never have any liability."

Miller is correct to the extent that the words "the party" refer to "the party in whose behalf such restraining order . . . was issued," but it does not follow that "the liability described is the liability of the plaintiff or plaintiffs." Miller's argument to this effect overlooks the accompanying words "and his surety or sureties" in the statute. Former section 535 provided for the recovery of damages in each of two situations. The first occurred when a *party* deposited either money or bearer bonds pursuant to former section 1054a, in which case "the liability of such party" *alone* might "be enforced." (See fn. 3, *ante.*)

The second situation occurred when a party posted security with one or more sureties, in which case "the liability of such party *and his surety or sureties* . . . may be enforced." (See the second sentence of former section 535 as quoted in fn. 3, *ante* [italics added here].) Miller's contention that "the party . . . will never have any liability" overlooks the dual nature of how and by whom security might have been posted, and the provisions of the statute for the enforcement of liability in either of the two situations just described.

Miller's second argument is to the effect that each of the above-quoted decisions is distinguishable because the party enjoined in each case had an opportunity to request that the court require the posting of a bond. He thus appears to equate a party's opportunity to *request* security with a court's obligation to *require* security, which means that he overlooks (1) the difference between injunctions and temporary restraining orders and (2) the court's power to make a temporary restraining order without requiring security. A trial court is usually required to exact an undertaking before issuing a preliminary injunction. (See § 529;[7] 2 Witkin, Cal. Procedure 2d ed. 1970) Provisional Rem-

[7]During the pendency of this action, section 529 provided in pertinent part: "529. On granting an injunction, the court . . . *must require* . . . [except in specified cases not applicable here] . . . a written undertaking on the part of the applicant, with sufficient sureties, to the effect that he will pay to the party enjoined such damages, not exceeding an amount to be specified, as

edies, § 95, p. 1529.) The posting of security is not a prerequisite to the issuance of a valid temporary restraining order. (*Biasca* v. *Superior Court* (1924) 194 Cal. 366, 367-368 [228 P. 861]; see also *Allen* v. *Pitchess, supra,* 36 Cal.App.3d 321 at p. 329; 2 Witkin, Cal. Procedure, *op. cit.,* Provisional Remedies, § 86, p. 1522.)

■ It thus appears that defendants exercised the wrong remedy. Instead of pursuing their common law remedies by way of an action for abuse of process or malicious prosecution (see *Dickey* v. *Rosso, supra,* 23 Cal.App.3d 493 at p. 497), they chose to attempt to enforce plaintiffs' liability pursuant to former section 535 in a situation where that statute was not applicable. The motions did not lie in the absence of security, and the trial court committed reversible error in granting them.

### III

■ Miller also contends (1) that former section 535 unreasonably discriminated in favor of defendants "who ha[d] the good fortune to have a trial judge who require[d] that a bond be posted as a condition of issuing a temporary restraining order as opposed to those . . . defendants . . . not so favored," and (2) that to deny his "right to recover" pursuant to the statute will deny his right to equal protection. Miller may make this contention for the first time on appeal because it pertains solely to a question of law and undisputed facts. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *Pena* v. *Municipal Court* (1979) 96 Cal.App.3d 77, 81 [157 Cal. Rptr. 584].)

Former section 535 provided a streamlined procedure for the recovery of damages in situations where the maximum amount recoverable had already been set by the amount of an undertaking. (See *Board of Medical Examiners* v. *Terminal-Hudson Electronics, Inc., supra,* 73 Cal.App.3d 376 at p. 389.) In situations where there was no undertaking which served to establish a ceiling on recovery, the affected litigants retained their right to recover damages in an action for abuse of process or malicious prosecution. Former section 535 promoted the efficient expenditure of judicial time and resources in those situations where a substantial issue (i.e., damages) had already been determined within an

---

such party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled thereto. . . ." (Italics added.)

Section 529 was amended by the same enactment which repealed former sections 535 and 1045a. (Stats. 1982, ch. 517, § 123, p. 2340.) The amended version includes the substance of the language quoted here. (See *ibid.*)

We have previously pointed out that there is nothing in the record to indicate that the trial court required a bond or undertaking as a condition of the limited preliminary injunction issued on August 15, 1975, or that plaintiffs provided such security in fact. (See fn. 2, *ante.*) Questions pertaining to the validity of the injunction have not been raised on the appeal.

established ceiling. Miller's claim of unconstitutionality fails because the differentiation between the classes of litigants established or suggested by the statute was rationally related to the legitimate legislative purpose of providing for judicial efficiency and economy. (See *In re David G.* (1979) 93 Cal.App.3d 247, 253 [155 Cal.Rptr. 500]; see also *Meredith* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 777, 781 [140 Cal.Rptr. 314, 567 P.2d 746]; *Philippart* v. *Hotchkiss Tract Reclamation Dist. 799* (1976) 54 Cal.App.3d 797, 806 [127 Cal.Rptr. 42].)

The order is reversed.

Poché, J., and Sims, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.