[Civ. No. 21964. Third Dist. May 31, 1983.]

MARK BRIGGS & ASSOCIATES, INC., Plaintiff and Respondent, v. KINESTAR, INC., et al., Defendants and Appellants.

COUNSEL

Wagner & Blaine and Carl P. Blaine for Defendants and Appellants.

Crow, Lytle, Gilwee, Donoghue, Adler & Weninger and Marc G. Marcus for Plaintiff and Respondent.

OPINION

**CARR, Acting P. J.**—Defendants appeal from a judgment against a corporate surety entered pursuant to former Code of Civil Procedure section 1058a (presently Code Civ. Proc., § 996.440). The judgment was the culmination of plaintiff's efforts to recover damages from defendants for an alleged breach of contract and for services performed. We affirm.

Defendants failed to answer plaintiff's complaint and on January 21, 1981, a default judgment was entered. On February 6, 1981, plaintiff recorded an abstract of judgment in Sacramento County. On February 10, 1981, defendant Kinestar transferred by deed recorded February 17th certain real property situated in Sacramento County. Plaintiff did not learn of the transfer until March and contacted the title insurer, who requested time to pursue satisfaction from defendants or possibly to "bond around the lien."

On March 17, 1981, defendants moved to set aside the default and to quash service of the summons. Without advising plaintiff, on April 1, 1981, defendants, or the title insurer who had failed to discover the abstract of judgment, recorded an undertaking with defendant Ohio Casualty as surety for the judgment lien created by plaintiff's abstract of judgment. The motion to set aside the default was heard in April. On July 15, 1981, the trial court granted the motion conditioned upon defendants paying plaintiff's attorneys fees and costs and posting a bond within 30 days in the amount of the judgment plus interest to preserve plaintiff's ability to collect a judgment if obtained. If the conditions were not met within 30 days the motion was to be denied. Although defendants paid plaintiff the attorneys fees and costs, no new bond was filed.

In late September 1981, defendants Kinestar and ESS, Inc., notified the trial court they had filed for bankruptcy. Plaintiff then moved for judgment against the surety, Ohio Casualty, on the April 1st bond pursuant to section 1058a of Code of Civil Procedure (now § 996.440). The trial court found the April 1st bond did not meet the conditions of the July 15th order as it would cover only the judgment lien created by the abstract of judgment and not any subsequent judgment obtained by plaintiff. The trial court found defendants had failed to

meet the bond condition. Therefore the motion to set aside the default had been denied and the January 21, 1981, judgment was still valid. Accordingly, the trial court granted plaintiff's motion for judgment against the surety.

## I

■ Defendants first contend the trial court did not have jurisdiction over the Ohio Casualty bond. They urge the bond was not given "in any action or proceeding" as required by Code of Civil Procedure section 1058a.[1] Their reasoning is: since plaintiff had already obtained a judgment (Jan. 21, 1981), and the trial court had not yet ruled on defendants' motion to set aside the default (July 15, 1981), there was no action pending (either against defendant or to execute on the property sold) when Ohio Casualty filed the bond on April 1, 1981. We are unpersuaded.

Code of Civil Procedure section 22 defines an "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, *enforcement,* or protection of a right, . . ." (Italics added.) It has similarly been called "the judicial means or procedure of enforcing a right." (*Anderson* v. *No-Doz* (1955) 134 Cal.App.2d 11, 1415 [284 P.2d 883].) Plaintiff had received a declaration of its right, but was attempting to *enforce* that right, i.e., payment of the judgment. The purpose of filing the judgment lien was to give the judgment creditor (plaintiff) "immediate security for the subsequent enforcement of the judgment." (*Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702, 707 [277 P.2d 9].) The April 1st bond was recorded for the purpose of preventing enforcement of plaintiff's judgment against the property defendants had conveyed. This is demonstrated by the face of the bond, which states it was given in the Superior Court for the County of Sacramento to release plaintiff's judgment, stating the case number, as well as the book, page and document number of the abstract and the surety's address for service pursuant to section 1058a. As the purpose of the bond was to postpone enforcement of plaintiff's judicially declared right, the action or proceeding to enforce that right was still pending. That the bond was filed in the county recorder's office and not the superior court is neither controlling nor relevant. The bond was given in an "action or proceeding" to enforce plaintiff's right. (Code Civ. Proc., § 22.) The surety thereby submitted itself to the jurisdiction of the superior court in all matters affecting its liability on the bond. (Former Code Civ. Proc., § 1058a; see present Code Civ. Proc., § 996.440.)

---

[1]Former Code of Civil Procedure section 1058a (now Code Civ. Proc., § 996.440), in force until January 1, 1983, provided in part: "Whenever any security is given in the form of a bond or undertaking, . . . in any action or proceeding, each surety submits himself to the jurisdiction of the court in all matters affecting his liability on the bond or undertaking. . . . The liability of such surety or sureties, if any, may be enforced on motion filed in the trial court without the necessity of an independent action. . . ."

On its face the bond was denominated as "an undertaking for release of judgment as provided by Section 681 et seq. C.C.P." Section 681 et seq., Code of Civil Procedure, make no express provision for an undertaking to stay execution on real property subject to a judgment lien by reason of the timely filing of an abstract of judgment. Of greater significance, however, this sequence of statutes does not prohibit the filing of such a bond. Though nominally delineated as posted pursuant to statute, the undertaking is in reality a common law bond.[2]

Common law bonds are in effect private contracts and are construed in the same manner as other contracts. (*Fresno Enterprise Co.* v. *Allen* (1885) 67 Cal. 505, 508 [8 P. 59].) In this context, such bonds are valid even if not statutorily authorized (*Morgan* v. *Menzies* (1882) 60 Cal. 341, 348), and the parties may bind themselves in any manner and to any extent provided the agreement does not violate public policy or positive statute. The general principles controlling common law bonds are stated in *Rexroth & Rexroth, Inc.* v. *General Cas. Co.* (1966) 242 Cal.App.2d 363, 370 [51 Cal.Rptr. 505]: " 'There are no specific rules controlling the obligation of a common-law bond, though the general principles governing contractual obligations apply. Therefore, the parties are limited only in that the bond must not violate public policy or positive statutory provision. Whatever obligation the principal and the sureties or obligors may see fit to enter will depend on the transaction in the course of which the bond is given. The same is true of the conditions. The parties may choose the liability to which they wish to bind themselves, and it is competent for them to insert such conditions as they desire, that is, to make contracts that shall be operative only in a particular event.' "

Valid common law bonds have been recognized by our courts when filed as a condition to the granting or denial of a court order where such undertakings are not statutorily authorized. (See *Baker* v. *Bartol* (1857) 7 Cal. 551, 553 (bond posted to avoid appointment of receiver of a trust fund); *Moore* v. *Ohio Casualty Ins. Co.* (1983) 140 Cal.App.3d 988, 993 [189 Cal.Rptr. 829] (bond posted to stay execution of unlawful detainer judgment).)

In the instant case, no court order required the bond as a condition of staying execution on the judgment. The bond was voluntarily filed, as expressed by the title insurer "to bond around the lien." No stay conditions were contained in the undertaking and plaintiff could have immediately moved for judgment against the surety. Plaintiff's failure to take such action upon learning of the bond raises an inference that plaintiff agreed to withhold further collection efforts on the judgment lien pending determination of the motion to set aside the default.

[2]Though not specifically addressed by counsel or the trial court in its order granting plaintiff's motion, the court's implied finding of a common law bond perforce underlies its order as there was no statutory authority for the bond.

The situation is somewhat analogous to that of *Rexroth & Rexroth, Inc.* v. *General Cas. Co., supra,* 242 Cal.App.2d 363, wherein Kern County agreed to approve a subdivision map conditioned in the developer's agreement to construct the streets and roadways according to the map and upon the posting of a statutorily required performance bond guaranteeing completion of the project. The developer, in addition to the performance bond, gratuitously provided a material and labor bond covering failure to pay subcontractors. This bond was not mandated by statute nor did Kern County have authority to require it. Plaintiff subcontractor was not paid for labor and materials and sued on the material and labor bond. Recovery was allowed on the basis the bond was valid as a common law bond voluntarily posted by the developer.

The case law on common law bonds gives substance to the general rule that parties may enter into a suretyship agreement under terms which best serve the particular circumstances, and the presence of statutory authority is not a prerequisite to the creation of a valid common law bond.

In the instant case, no statute prohibits the bond in question and the determinative factor is whether it is in some way violative of public policy. We perceive no public policy reason which prevents defendant from "bonding around" the present judgment lien. Plaintiff is in fact in a more secure position in that he has a bond of fixed value against which to proceed rather than a parcel of real property which must be subject to the expense and delay of execution sale to determine the sufficiency of the value to satisfy the judgment and costs. We discern no reason to preclude defendant and the surety from entering into an agreement under which the surety assumes an almost certain liability. Neither the cost nor the wisdom of assuming such a burden are matters for public concern or policy.

The bond before us was given for the benefit of plaintiff. To require plaintiff to levy execution against the property now in the hands of third parties in lieu of proceeding directly against the bond posted to satisfy plaintiff's claim is neither logical nor economical of time and money. A somewhat similar situation existed in *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, at pages 468, 475 [37 Cal.Rptr. 548], wherein a builder posted a performance bond as required by the lender for the benefit of persons who provided labor and materials. The bond was not recorded, as required by statute. The appellate court determined the failure to record did not render the bond void or add to the burden of the surety. The bond was valid as a common law bond for the benefit of the unpaid lien claimants who had filed mechanic's liens against plaintiff's property. The lien claimants had the option of proceeding on their liens against plaintiff's property or proceeding on the bond or both if necessary to satisfy their claims. Similarly, in the case at bar, plaintiff should not be limited to his remedy of execution on the property subject to the judgment but must be allowed the option of pro-

ceeding directly against the valid common law bond posted by Ohio Casualty. To hold otherwise would force plaintiff to follow a circuitous route to the same goal—i.e., plaintiff levies on the real property; the new owners look to the title insurer; the title insurer interposes the bond, admittedly an undertaking for the judgment lien. We do not find such excessive activity is required.

II

█ Defendants next contend that, assuming the trial court had jurisdiction over the April 1st bond, the bond satisfied the condition of the July 15th order and relief from the default should have been granted. Plaintiff therefore would have no judgment upon which to execute. This reasoning is unpersuasive.

The trial court's order required defendants to post a bond within 30 days to preserve plaintiff's ability to collect a *future* judgment in the event plaintiff prevailed after the default was set aside. The April 1st bond obligated the surety only on the existing judgment lien, and not any future judgment. The lien could not exist apart from the default judgment upon which it was based. "Thus, in the ordinary course of events when the judgment is vacated by court order the lien will also cease to exist, because the effect of a vacating order is to eliminate the judgment." (*Bulmash* v. *Davis* (1979) 24 Cal.3d 691, 697 [157 Cal.Rptr. 66, 597 P.2d 469].) Had the default judgment been set aside, the judgment lien based thereon would have been extinguished and with it the surety's liability. Defendants' counsel recognized as much when he informed defendants the April 1st bond "would cover only the lien proceeds and not any judgment, and the court specifically ordered a judgment bond." The recommended procedure for defendants was a motion to have the April 1st bond substituted for the required judgment bond together with a motion to set aside the abstract of judgment upon the filing of the bond and the setting aside of the default. In the absence of any such activity by defendants, the trial court correctly found the April 1st bond did not protect plaintiff's ability to collect on a future judgment and did not meet the conditions of the July 15th order. The motion to set aside the default was therefore deemed denied and the April 1st bond remained as an undertaking against the existing judgment lien. The trial court properly granted the motion for judgment against surety.

The judgment is affirmed.

Sparks, J., and Sims, J., concurred.